Argued October 27, affirmed November 24, 1914, rehearing denied
January 19, 1915.

## JOSEPH MILLING CO. *v.* JOSEPH.*

(144 Pac. 465.)

**Waters and Watercourses—Appropriation—Leakage.**

1. In calculating water appropriated for power or other purpose,
that lost by leakage of the ditches and flumes of the appropriator,
reasonable care and diligence in their construction and maintenance
being had, will be considered.

[As to right of one land owner to accelerate or diminish flow
of water to or from the lands of another, see note in 85 Am. St.
Rep. 707.]

**Waters and Watercourses—Appropriation—Abandonment.**

2. Nonuser of a portion of water appropriated for power, by rea-
son of improvements put in by the appropriator making use of all of
it not necessary, as it was before the improvements, to run all his
machinery, does not operate as an abandonment of his right, unless
such nonuser continue an unreasonable time.

From Wallowa: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by the Joseph Milling Com-
pany, a private corporation, the Joseph Waterworks
Company, a private corporation, and the Joseph Light
& Power Company, a private corporation, against the
City of Joseph, a municipal corporation, J. H. Thomp-
son, its mayor, I. H. Robinson, J. A. Blevans, Wesley
Duncan, Ed. Berland, Ed. Eben and J. M. Thompson,
councilmen of the City of Joseph; J. M. Mitchell, the
Dobbin Ditch Company, a private corporation; the
Wrenn-Dobbin Ditch Company, a private corporation;
the Big Bend Water Ditch Company, a private corpo-
ration; the Citizens' Water Ditch Company, a private
corporation, defendants and the Farmers' Water Ditch
Company, a private corporation, and the Silver Lake

---

*On the question of the abandonment or loss of rights of prior ap-
propriator of water, see note in 30 L. R. A. 265.        REPORTER.

Ditch Company, a private corporation, appellants, to establish the plaintiffs' rights, by prior appropriation, to 2,400 miner's inches of the waters of Wallowa River, in Wallowa County, for power purposes, and to restrain the defendants from interfering therewith. The court below rendered a decree establishing the rights of the parties to said waters. The Farmers' Water Ditch Company and the Silver Lake Ditch Company, defendants, appeal. The facts appear sufficiently in the opinion.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the names of *Mr. A. M. Runnells* and *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. Runnells* and *Mr. Colon R. Eberhard.*

For respondents there was a brief over the names of *Messrs. Crawford & Eakin* and *Mr. James A. Burleigh,* with an oral argument by *Mr. Thomas H. Crawford.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiffs, on October 10, 1910, commenced this suit to establish their right to the use of a certain amount of water for power purposes in the Wallowa River, in Wallowa County, which they claim to have obtained by prior appropriation thereof. They claim the right to take from said river at all times, for power purposes, 2,400 inches of water, miner's measure, and the decree of the court below gave them 2,000 inches, and established their rights in the waters of said river, as stated in said decree. Only two of the defendants,

the Farmers' Water Ditch Company and the Silver Lake Ditch Company, have appealed.

The Wallowa River is a natural stream of water, having its source or head in Wallowa Lake, a body of water about 5 miles long and 1½ miles in width. Said stream flows from its source in said lake in a well-defined channel, in a general northerly and north-westerly course, through Wallowa County, and empties into the Grande Ronde River at Rondowa, in said county. During the spring and early summer months, there is usually a large flow of water in said river; but, during August and the fall and winter months, the water therein is usually low. The City of Joseph is situated on the right bank of said river, near said lake.

The plaintiffs and their predecessors, in 1882, entered upon the banks of said river, at a point below the outlet of said lake and the head of said river, as described in the complaint, built a dam across said river, and constructed a ditch and flume therefrom to a point about 1,200 to 1,400 feet northeast of the place where said dam was so built, and there constructed a flouring-mill and other machinery. They equipped said mill for the manufacture of flour and other food products, and built and equipped an electric light and power plant, and diverted and appropriated from said river about 60 second-feet of its waters, and by means of said ditch and flume conducted said waters to said mill and said plants, and there used the same and the whole thereof for operating and running said flouring-mill in manufacturing flour and feedstuffs, in the generation of electric power for electric lighting purposes in the lighting of said City of Joseph and its business houses and homes, and for general power purposes. The plaintiffs have ever since said diversion and appropriation of said waters put the same to the said

beneficial uses, and are still using and intending to use said waters for said purposes, etc.   After alleging, in substance, the above-stated facts, the complaint alleges also, *inter alia,* that the plaintiffs' said diversion and appropriation and use of said waters take and require all of the waters of said stream during the low-water season thereof in January, February, March, part of April, and all of August, September, and the greater part of November of each year, and that they were at times short of sufficient water for their said appropriation.   The contention of the plaintiffs is that their predecessors in 1882 appropriated from said river, for the purposes stated *supra,* 60 second-feet or 2,400 miner's inches of water, and that they and their predecessors have used said 2,400 inches of water at all times since said appropriation, for the purposes stated above.

The Farmers' Water Ditch Company and the Silver Lake Ditch Company filed answers denying much of the complaint and setting up new matter.   The new matter of the answers was put in issue by replies.   The Silver Lake Ditch Company, by its answer, contends, *inter alia,* that on August 31, 1900, it appropriated from the waters of said river, at a point above where the plaintiffs took their said water from said stream, as stated *supra,* 5,000 miner's inches of water for the purposes of irrigation, household, and domestic use and for watering livestock, etc.   As stated *supra,* the court below found that the plaintiffs had appropriated as stated in the complaint and are entitled to use 2,000 inches of water from said river, etc.   The Silver Lake Water Ditch Company and the Farmers' Water Ditch Company appeal.   No other party appealed.

The mill erected in 1882 was a burr mill.   In 1893 or 1894 that mill was destroyed by fire.   Immediately

thereafter, a new mill, with the roller process, was constructed on the site of the old one, with a capacity of 50 barrels per day, with cleaning machinery, elevators and chopping mill. This mill has been operated ever since it was so constructed, and the water from said river, appropriated by the plaintiffs' predecessors, as stated *supra,* has afforded the power for operating said mill and the other machinery. The mill is from 1,200 to 1,400 feet from the point at which the water is diverted from the river. A part of that distance the water was conducted through an open ditch, and the remainder of the way by a flume.

When this suit was begun, the Joseph Waterworks Company was a party plaintiff, and the City of Joseph, its mayor and councilmen, and J. M. Mitchell were defendants. Prior to the decree in the court below, the City of Joseph purchased the rights and franchise of the Joseph Waterworks Company, and this suit was settled and dismissed as to the City of Joseph, its mayor and councilmen, J. M. Mitchell, and the Joseph Waterworks Company.

There are 533 typewritten pages of evidence, and it is impracticable to give even a summary thereof in an opinion of moderate length. We have read and considered the evidence, and will state our conclusions therefrom.

It is clearly shown, and not disputed by any evidence, that the grantors of the plaintiffs in 1882 and 1883 constructed a flouring-mill and other machinery, as stated in the complaint, and in 1882 or 1883, for the purpose of obtaining power to operate said machinery, they diverted and appropriated from the Wallowa River, at the point indicated *supra,* and conducted to said mill, through said ditch and flume, a large amount of water. This fact is not disputed by any evidence,

and it is clearly proved by the witnesses for the plaintiffs. The only controversy in relation thereto is as to the amount of water so appropriated and used. There is evidence tending to prove that the amount so appropriated was 2,400 or 2,500 inches, miner's measure; but there is other evidence tending to prove that the amount appropriated was much less than that. It is impossible for us to determine, from the conflicting evidence, precisely how much was appropriated. We are constrained, in cases like this, to act on what appears to us to be approximately correct. We have, after reading and considering the evidence, come to the conclusion that the finding of the trial court, upon this point, is correct. That court heard the evidence and the argument of counsel, and took the case under advisement, and, thereafter, found that the amount of water so appropriated was 2,000 inches, miner's measure, under a 6-inch pressure. This is not as much water as the plaintiffs claim, or as their evidence tends to prove; but the evidence for the defendants is entitled to consideration, and, on the whole, we deem the conclusion stated to be approximately correct. The appropriation was made more than 30 years ago, and it is difficult at this time to determine from the memory of witnesses exactly how much water ran through that ditch and flume to the mill in 1883.

The evidence for the plaintiffs tends strongly to show that the plaintiffs and their predecessors used, substantially, the same amount of water from 1883 until the evidence in this cause was taken. They used the same ditch and it was never enlarged. The flume was rebuilt, but the one in use when this suit was commenced was of substantially the same dimensions as its predecessor. There is evidence on the part of the defendants tending to prove that the quantity of water

used by the plaintiffs was less than the amount testified to by the witnesses for the plaintiff. There is evidence showing that the flume leaked more or less at all times, and that, at times, the leakage was very considerable. The evidence shows, also, that all flumes, as they are usually constructed, leak more or less, when they carry large quantities of water. The evidence shows that the plaintiffs' flume was well constructed, and that it was usually kept in fair condition.

1. It was incumbent on the plaintiffs to use reasonable care and diligence to keep their ditches and flume in good condition, and to prevent leakage therefrom. But it is evident that there will be some leakage from flumes that carry large quantities of water, even though their owners use reasonable care and diligence in constructing and taking care of them.

In *Union Mill & Mining Co.* v. *Dangberg* (C. C.), 81 Fed. 73, the court says, *inter alia:*

"No person, whether an appropriator or a riparian proprietor, should be allowed to 'be extravagantly prodigal in dealing with this peculiar bounty of nature' (water). * * The maxim of the law which he is bound to respect, while availing himself of his right, is, *'Sic utere tuo ut alienum non laedas.'* "

Kinney on Irrigation, Section 30, says in part:

"It has been the policy of legislatures and courts, as far as possible, to suppress all wastefulness or wasteful methods in the use of water."

In *Barrows* v. *Fox,* 98 Cal. 63, 67 (32 Pac. 811, 812), the court says:

"It [the decree appealed from] is also erroneous for the further reason that the plaintiffs have the right to divert from the stream a quantity of water sufficient to yield at the place of use the quantity required, after the loss by absorption and evaporation of so much

thereof as is necessarily so lost in a ditch and flume well constructed and kept in good condition. Ditches and flumes are the usual and ordinary means of diverting water in this state, and parties who have made their appropriations by such means cannot be compelled to substitute iron pipes, though they may be compelled to keep their flumes and ditches in good repair so as to prevent any unnecessary waste.''    ·

In *Town of Sterling* v. *Pawnee Ditch Extension Co.*, 42 Colo. 421 (94 Pac. 339, 15 L. R. A. (N. S.) 238), the syllabus is in part:

''The law contemplates an economical use of water, and it will not countenance a diversion, which, on account of the loss resulting from the appliances used to convey it, is many times that actually consumed at the point where utilized; and an appropriator of water must therefore exercise a reasonable degree of care to prevent waste, through seepage and evaporation in conveying it to the point where it is used.''

In *Roeder* v. *Stein,* 23 Nev. 92, 97 (42 Pac. 867, 868), the court says:

''Conveying it [water] through a ditch even will cause some loss, and, if the distance is great, or the soil loose or porous, the loss will be considerable. This, within any reasonable expense, is generally unavoidable.''

In his work on Water Rights (Vol. 1, 3 ed., p. 526), Wiel says:

''In calculating the amount [of water] actually used, the amount lost in necessary fluming must be added, even though there would be no loss if the water were transported in some other way, as, for example, by pipe-line. But use in poor and leaky flumes will be enjoined, or any waste from faulty means of conveyance, that can be saved by careful appliances.''

See, also, *Little Walla Walla Irr. Co.* v. *Finis Irr. Co.,* 62 Or. 348, 355 (124 Pac. 666, 125 Pac. 270), *Claypool* v. *O'Neill,* 65 Or. 511, 514 (133 Pac. 349).

The rule appears to be established that appropriators of water for power and other purposes are required to use reasonable care and diligence in constructing and taking care of their ditches and flumes, in order to prevent waste or loss of water appropriated. Where, however, they use reasonable care and diligence, some loss of water is likely to result; but they are not liable therefor.

We find from the evidence that the plaintiffs and their grantors, from 1883 to the fall of 1912, used for the purpose of generating power to operate their said flouring-mill and power plant and other machinery, approximately 2,000 inches, miner's measure, of the water diverted and appropriated from said river, in 1883, as stated *supra,* and that said appropriation has not been abandoned or lost to any extent, and that the plaintiffs are still using said water for said beneficial purpose.

It appears from the evidence that since the issues were made up in this case and most of the evidence was taken, to wit, in the fall of 1912, the plaintiffs have installed, in place of the old box flume, what they term a barrel flume for the purpose of conveying the water that they appropriated, as stated *supra,* from said river to their said flouring-mill and power plant and other machinery. This new flume carries the water without any material leakage. They, also, changed the location of their intake to a point much higher up on said river, and, by doing so, they increased the head from 22 to about 116 feet. By raising the head, they greatly increased the power of the water conveyed through

said new flume to the water-wheels in the said flouring-mill.

The plaintiff installed, also, in said flour-mill, a new high-pressure water-wheel, and connected it with said barrel flume. Since said barrel flume and said new wheel were installed, the water from said river has passed through said flume to said water-wheels in said mill, and said mill and said power plant and other machinery have been operated by the power generated by said water. The old box flume has been abandoned.

The defendants contend, and the evidence shows, that since the installation of said barrel flume and said new water-wheel, and the raising of the head from 22 to 116 feet, it requires less water to generate the necessary power to run the plaintiffs' said machinery than it did before.

J. L. Stannard, a civil engineer, testified as a witness for the defendants, and about a day before he gave his evidence he visited and examined the flour-mill and the power plant. He testified that it required, to operate the power plant, as it was being run when he visited it, 14 second-feet or 560 miner's inches of water and 5 second-feet or 200 miner's inches of water to run the flour-mill, or 19 second-feet or 760 inches of water to operate said mill and said power plant. He states, however, that when he examined the power plant its "load" was only 80 kilowatts and that its maximum capacity is 300 kilowatts. He said to operate the power plant at its maximum capacity would require 44 second-feet or 1,760 inches of water. Hence, to operate the flour-mill as it was running when he examined it, and the power plant at its maximum capacity, would require 49 second-feet or 1,960 inches of water, miner's measure. The evidence of said witness, as stated

*supra,* takes no account of the power required to operate the cleaning and elevator machinery, or chop and feed mill. The plaintiffs contend that these require about as much power as is necessary to operate the flour-mill. Adding 200 miner's inches for operating the cleaning and elevator machinery and the chop and feed mill, we have an aggregate of 2,160 miner's inches of water necessary to operate the flour-mill, the power plant, at its maximum capacity, and said cleaning and elevator machinery and the chop and feed mill. However, it is shown that there was no demand at the time that the evidence was taken for even a third of the maximum power of the power plant; but the demand for power seemed to be increasing, and it may be that the maximum power of said plant will be required in a short time, as the City of Joseph and that community appear to be growing, and, when people become better acquainted with electric power, there may be a greatly increased demand for electric lights and electric power.

2. Prior to the installation of said barrel flume and the additional water-wheel, it required all of the 2,000 inches of water to generate sufficient power to run the flour-mill, the cleaner and elevator, and the chop and feed mill, and the power plant at the same time. After said new flume and additional water-wheel were put in and the head raised, as stated *supra,* from 22 to 116 feet, much less water was necessary for said purposes; and a considerable portion of said 2,000 inches of water is not now needed or used for said purposes; but the failure, since the fall of 1912, to use a portion of said water, does not work a forfeiture of the plaintiffs' right to use it, and the nonuser of a portion of said water will not operate as an abandonment of a right thereto, unless such nonuser should continue for an

unreasonable length of time: See 1 Wiel, Water Rights, pp. 621, 622.

We have considered the questions involved, and find that the decree of the court below is correct, and that it should be affirmed.

AFFIRMED.   REHEARING DENIED.