Argued at Pendleton October 30; reversed December 19, 1933; rehearing denied March 13, 1934 ˙

# BROUGHTON ET AL. *v.* STRICKLIN ET AL.

(28 P. (2d) 219, 30 P. (2d) 332)

*Percy A. Cupper,* of Salem, and *O. C. Spencer,* of Portland (Percy A. Cupper, of Salem, and Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for appellants.

*George H. Brewster,* of Redmond, for respondent Cline Falls Finance Company.

*Max A. Cunning,* of Redmond, for respondent Central Oregon Irrigation District.

BEAN, J. Plaintiffs assert that during a part of 1931 the Pacific Power & Light Company made an arrangement with the Central Oregon Irrigation District and Arnold Ditch Company (corrected by the decree to Arnold Irrigation Company) whereby waters otherwise available at Cline Falls for hydroelectric power development were diverted above Cline Falls and used for irrigation. It appears from the evidence that during 1931, after the execution of the contract above mentioned, Cline Falls Finance Company informed the water master that it would not require 90 second feet for pumping for irrigation or 14.17 second feet for irrigation at Cline Falls. On May 23, 1931, the water master turned off the water and permitted it to be diverted to Central Oregon Irrigation District above Cline Falls, and it was used at a location other than at Cline Falls for irrigating for a part of that year.

Plaintiffs assign error of the court in finding that neither the Pacific Power & Light Company nor Cline

Falls Finance Company disposed of the water they were entitled to use at Cline Falls to the injury of plaintiffs' rights and in failing to find that such water was so disposed of for irrigation above Cline Falls during a part of the irrigation seasons of 1930, 1931 and 1932. Plaintiffs also assign as error the conclusion that upon the failure of Cline Falls Finance Company and Pacific Power & Light Company to use the waters to which they are entitled at Cline Falls, the same reverts to the stream and may be diverted and used above regardless of the reason for such non-use at Cline Falls and regardless of the prejudicial effects on plaintiffs' rights.

The Cline Falls Finance Company states that this controversy arises over the question as to where and to whom the waters of the Deschutes river should be diverted in case a prior appropriator does not make use of the waters to which it is entitled. It is clear that the contract above mentioned cannot be carried out unless the water to which the Cline Falls Finance Company is entitled, which was diverted at Cline Falls and used on the lands of the Cline Falls Ranch, and the 90 second feet used for pumping the same, is changed from the use for which it was awarded by the adjudication decree to another use for irrigation up the river about twenty-two miles. This fact is patent regardless of what we denominate the transaction between the Cline Falls Finance Company and the Central Oregon Irrigation District, whether a proposed sale or otherwise.

In plaintiffs' brief the question of the right to change the use of water appropriated for a specific purpose is discussed. In the briefs of the defendant Cline Falls Finance Company and the Central Oregon Irrigation District, they discuss the question as

to whom the waters of the Deschutes river should be diverted in case a prior appropriator for any reason does not make use of the water to which it is entitled, and other questions arising incidental thereto.

The Central Oregon Irrigation District could unquestionably purchase the land and water rights of the Cline Falls Finance Company. In order to pave the way for the use of the water at a different location the defendants claim that the Cline Falls Finance Company merely failed to use the water awarded to it as it was not necessary for the irrigation of its lands, but it is noticed from the contract to which we have referred that the Cline Falls Company thereby agrees to farm the ranch in such manner that it will require no water for the irrigation thereof or for pumping the same during any irrigation season, although the vendor agrees to cause the land to be farmed. There is but little controversy in regard to the facts of the case, except as to the amount of land cultivated on the Odin Falls Ranch, and some other minor questions.

As we view the matter, it is necessary to consider the question of the change of place of use of such water. We may start with the premise that it is the province of the state of Oregon to control and regulate the public waters of the state, and that it has done so by enacting a water code and other statutes. Under these statutes a large part of the waters of the different streams of the state have been adjudicated. Naturally some questions arise as to the rights of such water users after the adjudication. It will be remembered that the Odin Falls Ranch which has been adjudicated a right, as above stated, is located about four miles below Cline Falls, and its right, being junior to nearly all of the other adjudicated rights, is dependent upon the water which is released after being used

at Cline Falls for power. But little, if any, question remains as to the 90 second feet used by the Pacific Power & Light Company for power purposes during the term of the fifty-year lease. As we understand, that question is passed.

■ The question arises, can the Cline Falls Finance Company, by contract or any other arrangement with the water users above, on the river, authorize such upper water users to divert the water awarded to Cline Falls for power purposes, a nonconsuming use, and thereby deprive the plaintiffs of the use of such water? We think our statute regulates the matter. Section 47-712, Oregon Code 1930, which was enacted in 1909, with later minor amendments, provides, in part, as follows: All water used in this state for any purpose shall remain appurtenant to the premises upon which it is used and no change in use or place of use of any water for any purpose may be made without compliance with the provisions of this act; provided, that the owner of any water right may, upon compliance with the provisions of this act, change the use and place of use, the point of diversion or the use theretofore made of the water in all cases without losing priority of the right theretofore established. Whenever the owner of a water right for irrigation, domestic use, manufacturing purposes, or other use, for any reason desires to change the place of use, the point of diversion or the use theretofore made of the water, an application to make such change, as the case may be, shall be filed with the state engineer. The statute then provides that such application shall state, among other things, the use theretofore made of the water, description of the premises upon which the water is used, the description of the premises upon which it is proposed to use the water, the use which is proposed

to be made of the water and the reasons for making the proposed change, and provides the manner in which the state engineer shall give notice of the time and place for the hearing of such application and for persons having objections to the proposed change, for filing such objections, for the hearing, if objections are filed, and the determination thereof. Also, "If, after hearing or examination, the state engineer shall find that the proposed change can be effected without injury to existing rights, he shall make an order approving such transfer and fixing a time limit within which the application of water may be made to the new use". If a certificate has been issued covering such water rights, the state engineer is required to cancel the same on proof of complete application of the water to the new use and issue in lieu thereof a new certificate or certificates preserving the priority of rights theretofore established in connection therewith and covering such change in use or place of use. The act provides for an appeal from the decision of the state engineer.

■ In an opinion by the late Justice Eakin, in the case of *In Re North Powder River*, 75 Or. 83 (144 P. 485, 146 P. 475), where the North Powder Milling & Merchantile Company relinquished its claim to water during July and August of each year by an agreement with the farmers, made in the year 1896, we find, commencing on page 90 of the report, many statements and conditions which are peculiarly applicable to the case in hand. We there learn, by the holding in Oregon, "the water is held to be appurtenant to the land to which it is diverted, and the point of diversion cannot be changed if thereby the rights of others are prejudiced". As said in *Williams v. Altnow*, 51 Or. 275 (95 P. 200, 97 P. 539): "After the rights of sub-

sequent appropriators have attached, the prior appropriator cannot change or extend his use to their injury.'' In *Hough v. Porter,* 51 Or. 318, at page 426 (95 P. 732, 98 P. 1083, 102 P. 728), we find the following: "None of the quantity acquired under this appropriation can be used elsewhere without prejudicing others' rights, for which reason he is limited to its use, when needed, to the lands mentioned.'' In 2 Kinney on Irrigation (2d Ed.) § 870, p. 1530, it is stated, in effect, that water appropriated for milling purposes only cannot, as against an appropriator below, be used for irrigation; and the same rule would apply to a change in point of diversion of water used for power purposes to a point higher up the stream to be used for irrigation. There are two uses to which the water may be put: One in which none of the water is consumed, as for power purposes only, and one in which all or nearly all of it is consumed, as in the case of irrigation. And if the changed use be from one in which the water is not consumed (like that used for power at Cline Falls) to one in which it is (like the use proposed to be made by the Central Oregon Irrigation District for irrigation), such diversion is more apt to injuriously affect others. A change in the point of diversion and place of use may be made when it can be done without prejudice to the rights of others: *Whited v. Cavin,* 55 Or. 98 (105 P. 396).

■ In the North Powder River case, at page 94, the idea is conveyed that independently of the 1909 statute, in decisions permitting an appropriator to change the point of diversion or use, the Supreme Court of this state has apparently recognized the doctrine that if the change injuriously affects others it cannot be made. From the first water right cases in Oregon the rule established is that the appropriator has a right to apply

only so much water as is necessary for his use and actually beneficial, citing and quoting from *Simmons v. Winters,* 21 Or. 35 (27 P. 7, 28 Am. St. Rep. 727); citing *McCall v. Porter,* 42 Or. 49 (70 P. 820, 71 P. 976); *Bolter v. Garrett,* 44 Or. 304 (75 P. 142).

■ We conclude that the Cline Falls Finance Company, successor to the Cline Falls Power Company, with a date of relative priority of 1892, after the rights of the Odin Falls Land Company, to which plaintiffs have succeeded, have attached, cannot authorize or empower the Central Oregon Irrigation District to change the place of use of the water for power purposes, a nonconsuming use, to the irrigation district some 22 miles above, to be used for irrigation, or a consuming use, to the injury of the subsequent appropriator, the Odin Falls Land Company, thereby depriving the plaintiffs, successors in interest of the Odin Falls Land Company's right, of the right to that quantity of water to which they are entitled under the award, as adjudicated: § 47-712, Oregon Code 1930; *Hough v. Porter,* supra; *In Re Willow Creek,* 74 Or. 592 (144 P. 505, 146 P. 475); *In Re North Powder River,* supra; *Haney v. Neace-Stark Co.,* 109 Or. 93, 115, 116 (216 P. 757, 219 P. 190). Moreover, under the statute, it is a condition precedent to the exercise of the right to change the place of the use of water from that specified by the decree in a proceeding for the adjudication of water rights that the owner of such right make application to the state engineer and obtain his approval of such change: *Squaw Creek Irrigation District v. Mamero,* 107 Or. 291, 301 (214 P. 889). We find no evidence of any application being made to the state engineer to change the place of use from the Cline Falls Ranch to the Central Oregon Irrigation District.

The provision of the statute that "all water used in this state for irrigation purposes shall remain appurtenant to the land upon which it is used" is a valid exercise of the legislative power to regulate and control the use and distribution of the waters of the state. Water made appurtenant to one tract cannot be lawfully used on a detached tract, even though owned by the same person, without the approval of the state engineer: *Sears v. Orchards Water Co.*, 115 Or. 291 (236 P. 502, 237 P. 1118).

■ We have stated that the plaintiffs should not be deprived of the right to the use of the water to which they are entitled. In the administration of the Deschutes River decree the question naturally arises, to what quantity of water are the owners of the Odin Falls Ranch entitled during the time of the perfection of the inchoate right? They were awarded such right for the irrigation of 1,057 acres and allowed until October 31, 1935, in which to apply the water to a beneficial use upon the land, with a date of relative priority of January 7, 1909, for 50 second feet, and February 8, 1909, for the remaining quantity of water, for which a right is perfected. The area of land cultivated by plaintiffs on the Odin Falls Ranch is variously estimated by the different witnesses who are apparently merely guessing and the estimates vary widely. The inchoate right of plaintiffs is not perfected until the plaintiffs apply the water to a beneficial use. Apparently it is necessary for the water master or some competent person to measure the land that is in cultivation on the Odin Falls Ranch. It is the duty of the water master to distribute water to those entitled to its use, and in view of the fact that the plaintiffs are not entitled to the whole amount awarded to them until they make an application

thereof for a beneficial purpose the amount to which they are presently entitled for irrigation purposes is governed by the amount of water necessary for the land cultivated, not exceeding the amount awarded, and that amount should be allotted by the water master, and no more: § 47-310, Oregon Code 1930.

■ The respondent Cline Falls Finance Company claims by its answer and from the facts in the case that in the Deschutes River adjudication proceedings, plaintiffs' predecessor claimed to be the appropriator of the returned Cline Falls waters and that the Odin Falls Land Company's claim to such a right was not allowed and that the question raised by plaintiffs is res judicata. The trial court, in the adjudication proceedings, stated, in effect, that whether the Cline Falls Power Company would dispose of its rights for a consideration to upper users was a moot question, and that if the Cline Falls Power Company should proceed to dispose of its rights there would then be enough time to institute such a proceeding and have that question then determined. The Odin Falls Land Company was very properly adjudicated a right to the waters of the Deschutes river. In our opinion, it is immaterial whether those waters were described as having been used by the Cline Falls Power Company or not. The actual fact is that the water used on the Odin Falls Ranch was the water which was used at Cline Falls by the Cline Falls Power Company or its lessee or successor in interest. We fail to see how it was possible for the court in the adjudication proceedings to adjudicate the right of the Cline Falls Finance Company to sell and dispose of its water right to the Central Oregon Irrigation District, which was not attempted until several years after the adjudication proceedings. The matter is not res judicata.

It is unnecessary, as we view it, under the facts in this case, to decide all the questions that might arise as to the right of a junior appropriator to receive water not used by a senior appropriator. "Sufficient unto the day is the evil thereof." It is clearly shown that the Central Oregon Irrigation District proposes to purchase the water right at Cline Falls from the Cline Falls Finance Company and use it elsewhere to the detriment of plaintiffs. Whether they purchase the land also does not change the question of the right as to a change of the place of use, or the character of the use of the water. It is apparent from the contract between the Central Oregon Irrigation District and the Cline Falls Finance Company that the use of water at Cline Falls has been so arranged that the water appurtenant to Cline Falls Ranch will always be available to the Central Oregon Irrigation District when required by the district, if the program is carried out.

In the Cline Falls Finance Company's brief the following three Colorado cases are cited and discussed at length: *Cache La Poudre Reservoir Co. v. Water Supply & S. Co.*, 25 Colo. 161 (53 P. 331, 46 L. R. A. 175, 71 Am. St. Rep. 131); *Windsor Reservoir & Canal Co. v. Lake Supply Ditch Co.*, 44 Colo. 214 (98 P. 729); *Windsor Reservoir & Canal Co. v. Hoffman Milling Co.*, 48 Colo. 82 (109 P. 422, 30 L. R. A. (N. S.) 615). We have, with a good deal of interest, devoted much time to these cases. As we are not familiar with the statutes of Colorado and the statute is not prominently mentioned in the opinions in those cases, we do not obtain much benefit therefrom. We think that the question involved is governed by our own statutes and the decisions in this state.

The evidence shows that at the Odin Falls dam there was estimated to be a waste or leakage of from

25 to 40 second feet. With the great necessity for the use of water of the Deschutes river, this waste should not be permitted. The appropriator of water must exercise a reasonable degree of care to prevent waste: *Joseph Milling Company v. Joseph,* 74 Or. 296 (144 P. 465). The plaintiffs should be allowed at the first appropriate season, and within a year from date, to practically eliminate such waste. An economical use of the water for irrigation without excessive waste should be made even though some expense is incurred in constructing facilities therefor: *In Re Waters of Deschutes River,* supra, at page 666. In *Hough v. Porter,* supra, paragraph 44 of the syllabus reads:

"The water must be used in such manner, and such economical methods must be adopted in its application to uses desired, as will secure the greatest duty available, even though it becomes necessary to change at considerable expense the old methods, which had their origin when there was but little demand and the supply correspondingly abundant."

It is claimed by plaintiffs that when the water is scarce the wooden dam dries and the material shrinks. It is believed that this can be largely prevented by calking or battening the dam. This should be done under the direction of the state engineer and supervision of the water master, or other assistant, and a report thereof made to the circuit court for approval or disapproval, which the circuit court is hereby authorized to determine. In the event that plaintiffs fail to reasonably minimize the waste of water within such time, the water master should decrease the amount of the water allotted to Odin Falls Ranch when needed elsewhere in proportion to the unnecessary waste.

■ The right of the successor of Odin Falls Land Company is a vested right: 40 Cyc. 199.

The respondents claim that the water awarded to the Cline Falls Ranch is not now necessary therefor and for that reason is not used on the Cline Falls Ranch and they seek to apply the rule adopted where there is temporarily a surplus of water after satisfying a senior appropriator's needs. The provisions of the contract referred to plainly show that the arrangement was made for rye to be sowed on the Cline Falls Ranch, which would need but little irrigation, and none after May 23 of each year, and that the water is to be released to the Central Oregon Irrigation District for a valuable consideration. The proposed contract is tantamount to a sale of the water right, and it is proposed to change the place of use and the character of use of the Cline Falls water. The amount of water necessary for the irrigation of the land of the Cline Falls Ranch was a pertinent question at the time of the adjudication of such water right. We think the following quotation from *Simmons v. Winters,* 21 Or. 35, 42 (27 P. 7, 28 Am. St. Rep. 727), found in the North Powder River case, at page 94, referred to in the brief of the Cline Falls Finance Company applies more particularly to the original appropriation:

"The needs or the purpose for which the appropriation is made, is the limit to the amount of water which may be taken. He can only appropriate so much as he needs for the given purpose."

The appropriation of the Cline Falls Power Company, as adjudicated, is not questioned in the present case. It does not appear but what there is just as much need of water for the irrigation of the Cline Falls Ranch as there was at the time of the adjudication. We think the rule contended for does not apply. Neither does the rule in regard to an abandonment of a water right fit this case. The proposition to change

the place of use of water from Cline Falls to the district or districts above is not an abandonment of such water. To constitute an abandonment of a water right there must be a concurrence of an intention to abandon and an actual failure in its use for the statutory period.

We do not question the general rule that where a party has a prior right to a certain quantity of water he is entitled to it, but only to the extent needed for the use to which it was appropriated. Thereafter the next person in priority is entitled to it when temporarily not needed by the prior claimant, as held in *Claypool v. O'Neill*, 65 Or. 511 (133 P. 349).

It is stated in the brief of Cline Falls Finance Company thus: "The water is claimed for the right next in time not as a transfer or sale but because when the need ceases the right of the Cline Falls Power Company ceases." If this is the real situation, why the necessity of the Central Oregon Irrigation District making the contract with the Cline Falls Finance Company and paying $50,000 therefor, a large part of which is apparently for the water right?

We have before us for consideration the case of *Hutchinson v. Stricklin*, which involves the same principle as the case at bar under a different state of facts, this day decided, to which reference is hereby made.

It follows that the decree of the circuit court is reversed and one directed to be entered in accordance with this opinion.

CAMPBELL and BAILEY, JJ., not sitting.

Petition for rehearing denied March 13, 1934

ON PETITION FOR REHEARING

(30 P. (2d) 332)

BEAN, J. The respondents, Central Oregon Irrigation District and Cline Falls Finance Company, have filed a petition for rehearing and separate briefs in support thereof. Many matters are discussed, some of which require attention and consideration.

On account of the insufficient water in the Deschutes river to supply the various needs therefor, especially for irrigation, the decree of adjudication and the law should be strictly applied. We believe it to be largely a matter of administration of the decree and the statute. We think many of the questions now discussed in the briefs can be understood by the water master, with the assistance of the state engineer.

It is urged that there was an issue raised by the allegation in the complaint that there is machinery and equipment now installed and available for operation at Cline Falls to utilize 90 second feet for the generation of electrical power, 90 second feet for pumping and 14.17 second feet could be beneficially used for irrigation on the land for which the water was awarded, which allegation was denied by the answer.

It is a rather anomalous situation that a claimant should be disputing or minimizing its own water right. Therefore the matter may not have been given sufficient attention upon the former consideration. We must consider the rights at Cline Falls from two standpoints: First, what amount of water was used at Cline Falls and returned to the river, which the Odin Falls Land Company appropriated thereafter, at a point below Cline Falls? We refer to the briefs. The decree of adjudication and the statements in the briefs, we think,

are sufficient. At page 40 of the Cline Falls brief on rehearing, it is stated: "The Cline Falls Ranch has received each and every year its full adjudicated amount of water." We also refer to the brief of the Central Oregon Irrigation District, at page 21, where prior to the purchase of the Cline Falls Ranch, "The ranch used the maximum decreed amount of water and the right was exhausted every year prior to May 23." The water used at Cline Falls and returned into the stream is the basis for the appropriation at Odin Falls. Second, the question naturally arises, to what quantity of water are the owners of the Cline Falls Ranch entitled during the time of the perfection of the inchoate right? After the rights of the Odin Falls Ranch are satisfied and the Cline Falls Ranch does not desire to use the amount of water to which it would be entitled or which it was awarded, the Cline Falls' right should be limited to the quantity which is beneficially used.

What we said in regard to the measurement of the land at Odin Falls applies with equal force to the Cline Falls Ranch.

The state engineer awarded the Cline Falls Company (and the award was adopted by this court) 90 second feet of water for 12 months each year for generating electrical power, and 90 second feet additional for six months during the irrigation season for power to operate the pumps, or a total of 180 second feet for pumping and electrical power, and 14.17 second feet for irrigation. It is claimed that at the present time the machinery and accoutrements available at Cline Falls are not sufficient to utilize all of the award of the Cline Falls. As we have remarked, this is largely a question of administration.

We are referred to the testimony in another case, *Peck v. Ross,* which we have no right to consider.

Since the rendition of the former opinion, there has been filed a map of the Cline Falls land for the purpose of showing the cultivated land and the uncultivated land, with the suggestion that the case be referred to the circuit court for taking further testimony. This map and the data may be useful to the water master. Of course at present we cannot consider it.

It is stated in the brief that it is now found that a portion of the land claimed as irrigable on the Cline Falls Ranch lies in the stream bed itself and a portion is contained in the Deschutes canyon and the rocky precipitous cliffs and canyon walls thereof, and that a large portion of the 800 acres claimed as irrigable cannot be irrigated. If there is a question as to the amount of lands to be irrigated in any particular year at Cline Falls, the land in cultivation at Cline Falls and the amount of water necessary to pump the water to irrigate the same should be measured by the water master, or some competent person, and the amount of the water necessary to irrigate the same, limited by the duty of water and the irrigation season and in accordance with the decree of adjudication, allotted, so as to temporarily limit the amount of water awarded at Cline Falls to the amount necessary for the land cultivated and the amount necessary to pump the same, not exceeding the amount awarded by the decree, and those amounts should be allotted by the water master and no more. This provision, however, is subject to the established right at Odin Falls, and the quantity of water awarded to the Odin Falls Ranch should not be decreased until such right is satisfied. In other words, no water should be wasted, and the amount allotted by the water master each season should not exceed the amount necessary for a beneficial purpose. To illustrate, suppose that during the year of 1933 there were three hundred acres

cultivated and irrigated at Cline Falls. During the year 1934 there may be cultivated only two hundred acres, which would decrease the amount of water necessary for the irrigation thereof, and in view of the fact that the quantity used by one having an inchoate right might change from year to year, it is not practical or necessary for a court to determine the amount to be used each year.

 As to the waste of water at Odin Falls, to which we referred in our former opinion and which was estimated to be from 25 to 40 second feet wasted through the dam, we held in effect that the plaintiffs should be allowed a reasonable time to eliminate such waste, not exceeding one year. The ruling in our former opinion, as to the waste water at Odin Falls, will be modified so as to be as follows:

Section 47-311, Oregon Code 1930, reads thus:

"Said water master shall, as near as may be, divide, regulate and control the use of the water of all streams within his district by such closing or partially closing of the headgates as will prevent the waste of water, or its use in excess of the volume to which the owner of the right is lawfully entitled, and any person who may be injured by the action of any water master, shall have the right to appeal to the circuit court for an injunction. Such injunction shall only be issued in case it can be shown at the hearing that the water master has failed to carry into effect the order of the board of control or decrees of the court determining the existing rights to the use of water."

If there is an unreasonable waste at Odin Falls, as estimated, between 25 and 40 second feet, under this section of the statute we think it would be the duty of the water master to close or partially close the headgates or arrange the apparatus which may be in use, so as to prevent the unreasonable waste of water.

Plaintiffs will be required to practically eliminate the waste of water at Odin Falls. This should be done under the direction of the state engineer and supervision of the water master and report thereof made to the circuit court for approval or disapproval, which the circuit court is hereby authorized to determine. In the event that plaintiffs fail to reasonably minimize the waste of water before the irrigation season opens, or such further time as may be allowed by the circuit court, the water master, as suggested, shall not allot the water to Odin Falls Ranch to be wasted.

It is contended by respondents that only 90 second feet of water can be used at Odin Falls for power in pumping. F. F. Wright testified that it required 130 second feet passing Cline Falls to operate the pump at Odin Falls. It is claimed on behalf of the respondents that this includes the 40 second feet of loss at Odin Falls through the dam. However, as it is necessary to have the dam repaired and the water necessary for pumping purposes at Odin Falls to be measured by an engineer, it is not essential that we determine the amount actually necessary for pumping purposes for the Odin Falls Ranch.

The water rights awarded the Cline Falls and the Odin Falls for irrigation purposes and for pumping the same are both inchoate rights. Such a right does not take effect until the water awarded is applied to a beneficial use, which is the basis, the measure and the limit to the use of all water in this state. An inchoate right provided for in an adjudication decree may be said to be an established right, although conditional and not perfected. In our former memorandum we referred to such a right as being "vested", in the sense that it was a right to do certain things which the parties had already begun to exercise.

■ We find no reason for changing our former holding to the effect that the right of an appropriator of water, although subsequent in time to a prior appropriator, whose place of diversion and character of use is such that the waters are returned to the stream and made available to the subsequent appropriator below and applied to a beneficial use by him, so that the rights of such subsequent appropriator have attached, cannot be changed by the prior appropriator or his use extended to the injury of the lower subsequent appropriator: *In re North Powder,* 75 Or. 83, 92 (144 P. 485, 146 P. 475); *Williams v. Altnow,* 51 Or. 275 (95 P. 200, 97 P. 539).

■ It is contended in the argument that the contract between the Cline Falls Finance Company, the vendor, and the Central Oregon Irrigation District, the vendee, mentioned in our former opinion "has nothing to do with this case", and that the contract does not provide and does not contemplate that less water than the entire seasonal allowance shall be used on the ranch. We do not so read the contract. We refer again to a part thereof. The vendee agrees to pay the vendor the sum of $200 per day for each day that the vendor shall rotate the use of water appurtenant to said land, including the power right for pumping with the vendee during any irrigation season at the request of the vendee. The contract further provides: "The vendor further agrees that until said purchase price is fully paid it will, by its employees or by its lessee farm said ranch in such manner that it will require no water for the irrigation of said ranch or for pumping water to said ranch at any time during any current irrigation season, that the vendee's irrigation system is short of water or at any time that the vendee may request the vendor to cease using water on said premises." We think there

was a plain proposition to change the place of use from the Cline Falls Ranch to the irrigation district, about 22 miles above, which respondents claim a right to do. This would be to the detriment and irreparable injury of the Odin Falls' right, which had attached before the contract was made.

In view of the fact that the Odin Falls Ranch is the lowest place on the river which is irrigated and, as far as irrigation is concerned, water passing Odin Falls without being used would be practically a waste, the Odin Falls Ranch and the Cline Falls Ranch should be irrigated at the same time in order to make the best use of the water.

The question of the provision for rotation is not involved in this case.

■ Having shown, as we think, that most of the questions discussed relate to the administration of the decree, necessitating the measurement of the land and water, it is unnecessary to remand the case to the circuit court for the taking of further testimony, as requested by the respondents.

The petition for rehearing is denied.

CAMPBELL and BAILEY, JJ., not sitting.