Argued at Pendleton September 12; modified October 16; mandate
corrected October 23, 1934

# In re WATER RIGHTS OF DESCHUTES RIVER AND ITS TRIBUTARIES

(36 P (2d) 585)

*Percy A. Cupper,* of Salem (Lewis H. Irving, of Madras, on the brief), for appellant Jefferson Water Conservancy District.

*George H. Brewster,* of Redmond (Max A. Cunning, of Redmond, on the brief), for respondent and cross-appellant Central Oregon Irrigation District.

*H. H. DeArmond,* of Bend, for Arnold Irrigation District.

BEAN, J. This case has heretofore been before this court. See 134 Or. 623 (268 P. 563, 294 P. 1049). At that time, by request of the interested parties, the court referred the question of duty of water to the circuit court, and through the circuit court to the state engineer in order that further study might be made as to the amount of water necessary to be delivered on the land to produce fair results, with authority for the circuit court and state engineer to take further testimony if necessary. The state engineer made a two-year study of the duty of water. A report of his investigation consumes 164 typewritten pages, and the conclusion reached by the engineer is given at page 162 of the report. Objections to the state engineer's determination were filed with the circuit court. Hearing was had upon the objections and testimony offered in support of and against such determination. The lower court entered a decree on February 14, 1933, and thereafter on March 24, 1933, that court modified the supplemental decree which had been entered on February 14, 1933. From the supplemental decree and the modification thereof, the Jefferson Water Conservancy District and the Central Oregon Irrigation District have appealed.

This decree of the trial court provided that the decree of the circuit court entered February 10, 1928, and any later modification thereof shall remain in full force and effect, except as thereby modified.

The decree modifying the supplemental decree is as follows:

"ORDERED and DECREED that the former Decree of February 10th, 1928, as modified by the Decree of the Supreme Court and as modified by the Supplemental Decree of February 14th, 1933, shall remain in full force and effect except as herein amended in the following particulars:

## CUBIC FEET PER SECOND OF TIME PER ACRE AT DIVERSION

| Name of Project | Transmission Losses | April 1 to May 1 | May 1 to May 15 | May 15 to Sept. 15 | Sept. 15 to Oct. 1 | Oct. 1 to Nov. 1 | Total Acre Feet at River During Season |
|---|---|---|---|---|---|---|---|
| Arnold Ir. Co. | 65% | 1 ft. to 51 ac. | 1 ft. to 39 ac. | 1 ft. to 20.8 ac. | 1 ft. to 39 ac. | 1 ft. to 51 ac. | 15.42 |
| Cent. Ore. Ir. Co. | 45% | 1 ft. to 80 ac. | 1 ft. to 60 ac. | 1 ft. to 32.4 ac. | 1 ft. to 60 ac. | 1 ft. to 80 ac. | 9.91 |
| Des. Mun. Imp. Dist. No. 1 | 45% | 1 ft. to 80 ac. | 1 ft. to 60 ac. | 1 ft. to 32.4 ac. | 1 ft. to 60 ac. | 1 ft. to 80 ac. | 9.91 |
| Des. Rec. & Ir. Co. | 43% | 1 ft. to 83 ac. | 1 ft. to 62 ac. | 1 ft. to 33.45 ac. | 1 ft. to 62 ac. | 1 ft. to 83 ac. | 9.58 |
| Odin Falls Land Co. | 0 | 1 ft. to 150 ac. | 1 ft. to 109 ac. | 1 ft. to 58.7 ac. | 1 ft. to 109 ac. | 1 ft. to 150 ac. | 5.44 |
| Cline Falls Power Co. | 0 | 1 ft. to 150 ac. | 1 ft. to 109 ac. | 1 ft. to 58.7 ac. | 1 ft. to 109 ac. | 1 ft. to 150 ac. | 5.44 |
| Crook County Imp. Dist. No. 1 at Lone Pine Weir | 35% | 1 ft. to 137 ac. | 1 ft. to 109 ac. | 1 ft. to 86.6 ac. | 1 ft. to 109 ac. | 1 ft. to 137 ac. | 4.20 At Lone Pine Weir |

"It is further ORDERED and DECREED that the quantity of water appropriated by the Crook County Improvement District No. 1, is insufficient to properly reclaim and irrigate the entire project, 2520 acres, and that the water may be applied to a less area; provided that the total quantity diverted from the Deschutes River at the north canal dam shall be equal to but not exceed a sufficient amount to deliver at its weir during the irrigation season the quantities measured in second feet set forth in the above tabulation. The foregoing provision shall not be construed as affecting any contract or contracts now or hereafter existing between the Central Oregon Irrigation District and Crook County Improvement District Number One.

"Dated and signed in open Court this 24th day of March, 1933."

Appellant Jefferson Water Conservancy District makes the following assignment of error:

"The circuit court erred in allowing a larger quantity of water per acre for the irrigation of the lands in the various projects referred to in the decree than the quantity claimed, notwithstanding that no amendment asking for additional water has been filed."

This refers to the statement and proof of claim of the Central Oregon Irrigation District.

In the original proceeding the Central Oregon Irrigation District claimed an appropriation of 1,250 second feet continuous flow That portion of the claim was definite and certain. The district was awarded 985 second feet continuous flow under a date of priority of 1900 to the extent that it could beneficially apply the water to the lands under the system, irrespective of the quantity used on each acre.

Question No. 21 of the form furnished by the state engineer, on which the appropriator is required to sub-

mit his or its claim, reads as follows: "What amount of water do you estimate is necessary for the proper irrigation of the lands which you are irrigating or propose to irrigate, or for any other purpose for which a right is claimed?" In a detailed statement prepared by an engineer, contained in the exhibit in answer to that question, the district estimated what number of acre feet per acre was necessary for the months of April, May, June, July, August, September and October, and also estimated the seepage and leakage losses in the canal system at 45 per cent, and estimated the diversion duty on the Central Oregon Canal and the North Canal and Pilot Butte Canal as 6.73 acre feet per acre per season, which would be the minimum, but stated that it was less than the amount theretofore used on the lands.

■ The various estimates made by claimants in their statements and proofs of claim would naturally vary to quite an extent, and where a claimant states the definite amount of water claimed to be appropriated in second feet continuous flow, and simply makes an estimate of the duty of water, we think they should be all taken together with the other evidence of experiments and studies, and that the court should fix the duty of water practically irrespective of the estimates of the claimants. We do not understand that the circuit court allowed a larger quantity of water per acre for the irrigation of the lands in the various projects than the quantity claimed in the original proceeding.

It is true that claims for water must be definite and certain. We think the claim made in the case at bar complies with the requirements stated in 3 Kinney on Irrigation (2d Ed.) pp. 2786 and 2788, quoted with

approval in *Haney v. Neace-Stark Co.,* 109 Or. 93, at p. 110 (216 P. 757, 219 P. 190), as follows:

"The description of the right of the plaintiff should be pleaded with great particularity The full extent of the right should be stated, the purpose for which the water is used, and the amount necessary for that purpose. * * * The quantity of water claimed should be stated in cubic feet, acre feet, inches or gallons, or in some other definite measurement of water * * *. In fact, in order to enable the court to make a decree quieting the title to a water right, which will be definite and certain, it must have before it specific allegations as to the nature and extent of the water right claimed, which, of course, must be sustained by the proof."

■ A liberal rule is adopted in construing the pleadings, or a statement and proof of claim in water suits: *Hough v. Porter,* 51 Or. 318 (95 P. 732, 98 P. 1083, 102 P. 728).

■ The second assignment of the Jefferson Water Conservancy District is that the court erred in allowing a larger quantity of water than is required for proper irrigation purposes. The rights to the use of the waters of the Deschutes river and its tributaries, as determined by the decree in the present proceedings, entitled and limited the owners of a water right to the use of the quantity of water which may be applied to a beneficial use. If the amount specified in the decree is not beneficially used and it so appears to the water master, the error should be corrected. Counsel for this claimant argues that the proper duty of water is that quantity which produces fair results and not the quantity which produces the maximum crop nor the quantity that produces the largest yield per unit of water: *Hough v. Porter,* supra.

After much study and many experiments, the duty of water has been fixed in this case as indicated. The testimony does not indicate that the quantity of water allowed would produce the maximum crop or the largest yield, but no more than a fair crop. In our former opinion, *In re Waters of Deschutes River,* supra, at page 666, this court said:

"It is a duty of the court in adjudicating water rights to suppress all wasting of water and the court may go further and declare what shall constitute the economic use of the water and to fix its proper duty by a decree awarding the use of a certain amount of water for that purpose. Water is too precious an article in the arid region, or semi-arid region, to be permitted to run to waste."

We might add that it is the duty of the water master, or of those who administer the decree, not to allocate the water to a water user, who, on account of changed conditions, cultivates a less quantity of land one year than another and does not need the water allotted to him and cannot use the same for a beneficial purpose, or if, for any reason the water is not needed by a water user for a beneficial purpose, although the same may be awarded to him, the water master should regulate the same so that there should be no waste of water. Beneficial use is the limit of the right to the use of water in this state: § 47-901, Oregon Code 1930.

We have given special attention to the losses of water by seepage and evaporation, as recommended by the state engineer and as fixed by the decree of the circuit court. In the report of the state engineer, after a study of the duty of water for two years, the following suggestion is made for decreasing losses:

"It is believed that these losses can be materially decreased at expense not prohibitive, by the removal of

rock ledges that act as checks in the canals, by the repair of crevasses as fast as they appear, by decreasing the excessive cross section of some laterals to a size proportionate to the amount of water which they carry and by using flumes through some of the worst sections of lateral and canal, such as the Peterson-Whittemore section of the Pilot Butte Canal mentioned previously, and also by using flume on some of the farm ditches between the farm weir and the field. It is suggested that the districts make studies to determine whether or not flumes or lining are economically feasible.''

After the careful investigation and experiments made by the state engineer, and according to the painstaking report, it does not appear that the percentage of losses determined and allowed by the trial court can be decreased This, however, should not prevent the suggestion that the water users make studies to determine whether or not flumes or lining are economically feasible, and, if so found, to decrease the losses in that manner. See *Broughton v. Stricklin,* 146 Or. 259 (28 P. (2d) 219, 30 P. (2d) 332). We do not deem it feasible at this time to change the percentage of loss as made by the circuit court, after the recommendations of the state engineer, and do not consider that it can safely be done at this time.

It is apparent that a large portion of the Deschutes river irrigation project requires large quantities of water on account of the broken topography of the land and the porous nature of the soil, the proximity of very porous sub-soil or lava rock, and the lack of vegetable matter within the soil. It is indicated that in only one irrigation project in the state are the conditions of the soil worse than those on the Deschutes river, namely, on the Walla Walla river in the eastern part of Umatilla county. There is another matter wherein the Deschutes project differs from any other project in the

state, of which we have information, and that is that the run-off of the water in the spring is a very slight increase on account of the lava formation which holds the water back as a kind of reservoir.

It is claimed that there is not water enough in the Deschutes river to supply all the water that has been awarded by the decree to the different water users. The experience, while the original proceedings were pending and the parties were working under the original decree as to the allotment and duty of water, was that on account of the scarcity of water many of the water users would apply the water to a small portion of the land. For instance, one man has a water right for 49 acres and received more than 1.8 acre feet therefor during the 90-day period of maximum use and was able to irrigate but 27 acres; another had a water right for 348 acres and was able to irrigate but 230 acres, yet he received more water than he was entitled to under the decree. During the years that these proceedings were pending and since some of the estimates were made upon which the original decree was based, there has been much study and many experiments made as heretofore indicated, and we think that the court was in a better position to fix the duty of water on March 24, 1933, than when the original decree was entered.

The third assignment of error of the Jefferson Water Conservancy District relates to the allowance for seepage and evaporation of 45 per cent instead of 40 per cent of the amount diverted, to which we have already referred. The state engineer fixed the duty of water for the Central Oregon Irrigation District allowing 45 per cent for transmission loss from the river to the farm weirs, and recommended the following in acre feet to be delivered to the farm weirs,

April .5, May .8, June 1.2, July 1.2, August 1.2, September .8, October .5, figured at 11.2 acre feet at the point of diversion.

The Central Oregon Irrigation District appeals and contends that the amount allowed by the state engineer should be fixed as the amount for that district. The supplemental decree maximum of the Central Oregon Irrigation District is 9.91 acre feet, but the decree provides for different periods and for different duty of water during the early part of the irrigation season, May 1 to May 15, and from September 15 to October 1, and from October 1 to November 1.

We are firmly convinced that at the present time the determination of the circuit court is approved by the state engineeer.

A large amount of water was awarded to the Central Oregon Irrigation District, and no doubt strenuous endeavor will be made to conserve all of the water possible with a true regard to the junior water rights, and taking into consideration all the facts and circumstances delineated by the testimony in the case and by the report of the engineer, we believe that a fair duty of water was awarded to the Central Oregon Irrigation District.

The Central Oregon Irrigation District assigns that the court erred in awarding to Cline Falls Power Company a quantity of water greater than three acre feet on the land. It is well known that the Central Oregon Irrigation District now owns the ranch at Cline Falls and requested no change in the duty of water. They suggest that the owners of the ranch do not need and will not use to exceed three acre feet per acre, as the ranch has been in the past and will be in the future cropped principally to rye, a crop requiring very little water.

Therefore, the duty of water fixed for the Cline Falls Power Company, as fixed by the circuit court, will be limited to three acre feet per acre for the irrigation season. This provision, however, will not change the directions or provisions in the case of *Broughton v. Stricklin,* supra, relating to the water awarded to the Odin Falls Land Company and as affected by the use of the water at Cline Falls. The provisions in the opinion in that case, especially the opinion on the petition for rehearing and the decrees entered in conformity therewith, will govern the right of Odin Falls Land Company and also of the Cline Falls Finance Company, as pertaining to the change of the place of use of the water awarded to the Cline Falls Finance Company.

The Central Oregon Irrigation District raises the question as to allowing the Cline Falls Power Company a right for 90 second feet for pumping, and also in allowing the Odin Falls Land Company a right for 150 second feet for pumping. The opinions and decrees in the case of *Broughton v. Stricklin,* supra, make ample provision upon these questions and should be strictly adhered to. In the opinion in that case, at page 280, we said, in relation to the amount of lands to be irrigated in any particular year at Cline Falls:

"the land in cultivation at Cline Falls and the amount of water necessary to pump the water to irrigate the same should be measured by the water master, or some competent person, and the amount of the water necessary to irrigate the same, limited by the duty of water and the irrigation season and in accordance with the decree of adjudication, allotted, so as to temporarily limit the amount of water awarded at Cline Falls to the amount necessary for the land cultivated and the amount necessary to pump the same, not exceeding the amount awarded by the decree, and those amounts should be allotted by the water master and no more.

\* \* \* In other words, no water should be wasted, and the amount allotted by the water master each season should not exceed the amount necessary for a beneficial purpose.''

The same directions were made in regard to the Odin Falls Land Company. Therefore, we see no necessity of further discussing the question of the water used for pumping purposes and irrigation at Cline Falls and Odin Falls.

It is stated that there is a clerical error in the decree of the circuit court in the description of the duty of water for the Crook County Improvement District No. 1, but we find no such error. The duty of water for the Crook County Improvement District No. 1 is fixed ''at Lone Pine Weir'' in the decree.

After a careful consideration of the testimony taken before the trial court and the report of the state engineer, except for the limitation as to the amount of water of the Cline Falls Power Company, we approve the decree of the circuit court. We have given this case much more thought and consideration than this memorandum indicates. No other question except the duty of water is involved in this case.

All of the parties being interested in the determination of the duty of water, each party will pay his or its own costs and disbursements. No costs or disbursements are to be awarded to any party in this court.

With the slight modification mentioned, the decree of the circuit court is affirmed.

CAMPBELL and BAILEY, JJ., not sitting.

402

CORRECTION OPINION

BEAN, J. It appearing from the proper application that the rights of the Crook County Improvement District No. 1, as set forth in the circuit court decree, on account of a clerical error, are not correctly described and that the same should be changed, and that the language used, in describing the rights and duty of water for the Crook County Improvement District No. 1, is ambiguous and susceptible of two meanings, as the name of the river is not mentioned, the decree of the circuit court is corrected and the same is further modified so as to read as follows:

"Crook County Improvement District No. 1; Transmission losses 35%; Cubic feet per second of time per acre at diversion, April 1 to May 1, 1 ft. to 137 ac.; May 1 to May 15, 1 ft. to 109 ac.; May 15 to Sept. 15, 1 ft. to 86.6 ac.; Sept. 15 to Oct. 1, 1 ft. to 109 ac.; Oct. 1 to Nov. 1, 1 ft. to 137 ac.; Total acre feet during season 4.20 at Lone Pine Weir on Crooked River."

CAMPBELL and BAILEY, JJ., not sitting.