The Vermont Central Rail Road Company *v.* Estate of Zerah Hills.

*Parol evidence to control deed. What will pass by a deed. Disturbance of right. Appraisal of damages by rail road commissioners.*

A deed, absolute in its terms, cannot be controlled by oral evidence of conversation between the parties, previous to its execution.

A deed, which is absolute in its terms, and without conditions or reservations, will have the effect to convey the land described in it, with all the privileges of drawing water from other portions of the grantor's land, which were then in use, as appurtenant to the land.

And if water is conveyed in an aqueduct from a spring upon another portion of the grantor's land to the land conveyed, and there used at the time of the conveyance, any diversion of the water by the grantor, although upon that portion of his land not conveyed by the deed, will be a disturbance of the right of the grantee, for which an action may be sustained. The grantor cannot be allowed to say, in defence, that the grantee did not desire to use the water, or that he has suffered no detriment.

The defendant was the owner and occupant of a messuage, to which water was conducted, for use, by an aqueduct, from a spring upon another portion of his land, and the Vermont Central Rail Road Co. having located their rail road across the same, the commissioners were called upon to appraise the damages thereby occasioned to the defendant. At the hearing before the commissioners the defendant stated, that he should use the water for the purpose of supplying a new house, which he contemplated erecting, and that the commissioners need not take the water into the account in assessing the damages. The president and engineer of the company were present, and heard this statement, and made

XXIII. 86

no claim to the use of the water; and the water was not taken into considera-
tion by the commissioners, in assessing the damages.  The defendant received
from the company the amount of damages assessed by the commissioners, and
executed to the company an absolute deed of the premises, without condition
or reservation.  And it was held, that the right to use the water upon the prem-
ises passed by the deed.

This case was referred, under a rule from the county court for
the county of WASHINGTON; and the referee reported the facts sub-
stantially as follows.

In 1846, Zerah Hills, now deceased, owned a building lot, with
buildings thereon, in the village of Middlesex, through which lot the
rail road of the Vermont Central Rail Road Company was located.
From about the year 1830 Hills had supplied the house upon the
premises with water brought in a wooden aqueduct a distance of
about thirty rods.  On the first day of April, 1839, Hills, by written
lease, duly executed, granted to Jesse Johnson, Jr., who resided on
the opposite side of the road, and southerly, from the house of Hills,
the privilege of taking water for his house from Hills' penstock,
when there should a greater quantity of water run there, than
what was necessary for the use of a family and barn on the premises
of Hills, for the term of 999 years; and Hills bound himself not to
take water between his house and the head of the aqueduct, or
spring, from where the water was taken, so as to deprive Johnson of
the full privilege of the grant; and Johnson, having sold his prem-
ises to one McIntyre, afterwards duly assigned to McIntyre the
lease.  The Vermont Central Rail Road Company, having located
their rail road across the premises of Hills in such manner as to re-
quire the removal of the buildings, in the spring of 1846 called upon
the commissioners, appointed for that purpose, to appraise the dam-
age to Hills occasioned by such location.  Hills appeared before the
commissioners, and stated, among other things, to the commission-
ers, that he should use the water, then running there, for a new
house, to be erected northerly of the one then standing there.   The
president and engineer of the company were present and heard this
statement, and made no claim to the water; and the water was not
taken into consideration by the commissioners, in estimating the
damages.   Afterwards, on the sixteenth day of June, 1846, in con-

Vt. Central Rail Road Co. *v.* Estate of Hills.

sideration of receiving the amount of money awarded to him by the commissioners for the premises, the whole of the premises being taken by the company, Hills executed to the company a warrantee deed of the premises, without reservation or exception. Hills claimed to have the water reserved, but the agent of the company, who received the deed, would not do it, saying he knew nothing of such reservation and that Hills must trust to their understanding of that matter and the good faith of the company. Soon after giving the deed, the water ceased to run in the aqueduct, by reason of its decay, to the premises so deeded, but was taken out at a point north of the leak, by all who used water from the aqueduct, until Hills diverted it, and conducted it to his new house, which was about thirty rods northerly of the premises deeded to the company. In the spring of 1848 Hills, having moved into the new house, took the water from the aqueduct near that house and conducted the water by a new aqueduct to the new house, and thence by a new route to the house of McIntyre. This diverting of the water is the injury sued for in this action. Hills died in September, 1848. During the summer of 1848, the company, having previously removed the house from the premises deeded to them by Hills, constructed their rail road through the premises, and in doing so excavated about twelve feet deep, in doing which they cut off and took out the old logs of the aqueduct, which they never offered to restore ; nor have they ever repaired, or offered to repair the decayed part of the aqueduct, northerly of the rail road track, so as to have the water run to the premises, after it stopped in 1846. The company have all the while owned, and still own, a small dwelling house, which stood on a lot adjoining to the premises deeded to them by Hills, which would be more accommodated and be of more value, if its occupants could get their water at the place where the old penstock stood on the premises deeded to the company by Hills. The company made no complaint to Hills, during his life time, in regard to what he had done, nor did they give any assent to it.

The county court, May Term, 1850,—REDFIELD, J., presiding, accepted the report, and rendered judgment thereon for the plaintiffs for one dollar damages. Exceptions by defendant.

*J. A. Vail* for defendant.

1. The plaintiffs have no just claim to the water, for the reason that it was not appraised by the commissioners. It was distinctly understood by the parties, that Hills was to have the water for his new house.

2. The spring, from which the water was taken, was upon another and distinct piece of land, which was not conveyed to the plaintiffs, and for that reason, the privilege of taking the water, or the spring, not being mentioned in the deed, the spring would not pass by the deed, and Hills might lawfully take water from it, or from the old aqueduct, for his new house. *Manning* v. *Smith,* 6 Conn. 289.

3. If the plaintiffs have a right to draw water from the spring for the use of one family, it was time enough for them to complain, when Hills refused to permit them to exercise the right. Hills had no notice, that the plaintiffs wanted or claimed the right to take water from the spring.

4. Hills virtually had a license from the plaintiffs to take the water, which was not countermanded in his life time.

*Peck & Colby* for plaintiffs.

1. The plaintiffs acquired a right, by deed, to have the water conveyed across the defendant's land, in the aqueduct, to the premises purchased of the defendant, in the manner it had been done previous to the conveyance. *Nichols* v. *Chamberlin,* Cro. Jac. 121. *Nitzell* v. *Paschal,* 3 Rawle 76.

2. As to the question of damages,—"if water is wrongfully diverted from the plaintiff's mill, nominal damages may be recovered, though no actual injury be proved." "An unoccupied mill has a value, which is under the protection of the law." 2 Hill 133. *Butman* v. *Hussey,* Fairf. 407. *Blanchard* v. *Baker,* 8 Greenl. 268. But the referee finds actual injury, by diverting the water from the acqueduct.

By the Court. It is very obvious, that oral evidence of conversations between the parties, previous to the execution of the deed, cannot, in a court of law, be allowed to control the deed. The party must be content to abide by the deed, as he gave it. That is general, without condition, or reservation. We think it must have .

the effect to convey the land, with all the privileges of drawing water from other portions of the grantors' land, which were then in use, as appurtenant to the land. It would be wonderful, if this were not so, in ordinary cases of deeds of land with artificial ponds and aqueducts. It is admited, such a right is acquired by fifteen years use. If conveying the land would not convey the right, it would revert to the dominant proprietor, even after he had granted it away, or lost it by adverse use, which would be absurd. And even if the owner of the land had acquired no perfect right, it seems to us, that a general conveyance of the land, with all its privileges and appurtenances, the acqueduct being in use, would bind the grantor to defend the title to it, if he gave covenants of warranty, &c. And if so, then clearly, when he owned the spring, the right will pass by the deed. The case of *Manning* v. *Smith*, 6 Conn. 289, is certainly very much in point, and if it were to be regarded as full authority, must certainly govern the present. But it seems to us opposed to the early English cases, and to have been decided upon too narrow ground, and not fully consonant to the soundest principles.

And the grantor, in the present case, having diverted the entire water course, it is not for him to say, that the plaintiffs did not desire to use it, or that they have suffered no detriment. They had the right to insist, that it should flow in its accustomed artificial channel, and any diversion, although not upon their land, is a disturbance of their rights, and in contemplation of law, affords a cause of action, the same as diverting the water from a natural stream subjects the party to an action, at the suit of all the proprietors below.