Argued January 14, modified February 15, 1916.

# TALBOT v. JOSEPH.*

(155 Pac. 184.)

**Waters and Watercourses—Conveyance of Water Rights—Nature of.**

1. While an easement as a way must be appurtenant to some land, a water right need not be an appurtenance, and an interest in a water right which was granted to a land owner may be conveyed to one not owning such land, for otherwise the irrigation of arid lands would be impeded.

**Waters and Watercourses—Water Rights—Construction—Definiteness.**

2. A conveyance of a right to enough water from the natural flow of Latourell Falls Creek, to be taken above the large falls, to maintain a continual flow through a four-inch pipe is sufficiently definite, where the deed stated that the lands were in M. County of the state, to pass title, for the water right, in view of the whole instrument, could be ascertained.

**Waters and Watercourses—Water Rights—Construction.**

3. Where a grant of the right to take water from a stream also granted 10 feet square of ground upon which to build a tank to feed the pipe and a strip of ground 10 feet wide from where the stream should be tapped to where the pipe should leave the lands of the grantor, but no location for the tank or right of way was fixed, title to no particular parcel of land passed.

**Waters and Watercourses—Water Rights—Grants—"Flume."**

4. Defendants were granted the right to take enough water from a natural stream above a falls to maintain a continual flow through a four-inch pipe, and also 10 feet square of ground upon which to build a tank to feed the pipe, as well as a strip of ground from the point of diversion to where the pipe should leave the lands of the grantor, with the right to enter on the lands to maintain and repair the pipe flume or aqueduct and tank or reservoir. *Held* that while the primary meaning of the word "flume" is a stream or river, but is usually used as designating an artificial channel to be applied to some definite use, and may mean either an open or a covered aqueduct, the use of the word "flume" must not be taken as to authorize the defendants to erect an open box flume, instead of conducting the water in a four-inch closed pipe, the numerous references to pipes showing that a pipe was intended.

**Vendor and Purchaser—Bona Fide Purchasers—Notice—Abstract.**

5. A party is not entitled to rely on an abstract, but is charged with notice of all matters affecting his title which are of record.

*On the grant of water-power, see note in 67 L. R. A. 369.

On the matter of change in exercising right to take water from another's premises, see note in 43 L. R. A. (N. S.) 824.

The effect of a grant or reservation of water-power, without a definite grant or reservation of the necessary ground to utilize it, is discussed in note in L. R. A. 1916A, 508.          REPORTER.

**Constitutional Law—Taking of Property—Remedies.**

6.  Where defendants, without authority, constructed a flume over plaintiff's land to divert water, instead of making the diversion by pipe as authorized, plaintiff, though the land was not used and was of little value, is entitled to redress; Article I, Section 10, of the Constitution, declaring that for every injury there should be a remedy.

**Waters and Watercourses—Appropriation of Water—Right to Make.**

7.  Where defendants were granted the right to take a certain amount of water from a creek on plaintiff's land, they cannot enter upon the land and make an additional appropriation of water under Section 6594, L. O. L., declaring that, subject to existing rights, all waters may be appropriated for beneficial use.

[As to appropriation of water, see note in 60 Am. St. Rep. 799.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by Guy W. Talbot against George W. Joseph and Harold W. Maffet, to abate and compel the removal of a V-flume which the defendants maintain upon the land of the plaintiff.                    MODIFIED.

For appellant there was a brief over the names of *Mr. William W. Cotton, Mr. H. W. Strong,* and *Mr. John A. Laing,* with oral arguments by *Mr. Cotton* and *Mr. Strong.*

For respondents there was a brief over the names of *Messrs. Joseph & Haney* and *Mr. Barnett H. Goldstein,* with oral arguments by *Mr. Bert E. Haney* and *Mr. Goldstein.*

MR. JUSTICE BURNETT delivered the opinion of the court.

According to the report of the testimony there is but little dispute about the facts.    The controversy hinges on the construction to be given to a deed from the common grantor of the parties under which the defendants claim.    In 1893 J. C. Latourell was the owner

of 160 acres of land in Multnomah County, through which flows Latourell Falls Creek. This stream is non-navigable, and perhaps but little more than a mile in length. It flows northerly through the lands of plaintiff into the Columbia River. In its course it falls 240 feet over a precipice on his premises, and at that point is visible from steamers plying on the Columbia River and from trains passing on a nearby railway. The waterfall thus formed is far-famed as an object of great natural beauty. In 1893 Latourell sold a portion of his tract to one Maffet, who in turn deeded the same premises to the present defendant Maffet. By apt metes and bounds the deed conveys a designated part of the land, and then continues in these words:

"Also enough water from the natural flow of Latourell Falls Creek to be taken above the large falls, to fill and maintain a continual flow through a four-inch pipe, at all seasons of the year. Also ten feet square of ground above the Latourell Falls upon which to build a tank to feed said pipe and a strip of ground ten feet wide from where said creek is tapped to said tank and from said tank to where said pipe-line leaves the lands of J. C. Latourell, and the right to enter upon adjacent lands at all times to erect, maintain, repair and operate said pipe, flume or aqueduct and tank or reservoir."

By mesne conveyances the plaintiff became owner of the remainder of the original tract on June 21, 1911. It is to be determined how the excerpt above set out affects the plaintiff's holding. In purchasing, he relied upon an abstract of title and not upon a search of the records. In the abstract no mention was made of the deed to Maffet. The plaintiff declares that he had no actual notice whatever of the quoted portion of that deed. The defendant Maffet conveyed to the defendant Joseph an undivided half interest in the privilege

conferred by the quoted clause of the Latourell deed, all prior to the time the plaintiff acquired title to his tract. The defendant Joseph does not own nor claim any interest in the premises described by metes and bounds in that deed. After the plaintiff acquired title, the defendants, without his knowledge, went upon his land and constructed a flume from a point about 1,200 feet south of and above the falls and thence running substantially parallel to the stream northerly about 900 feet, where it leaves the lands of the plaintiff, turns on a northeasterly course, and afterward crosses a corner of his premises. The flume is constructed of boards nailed together at right angles in a V-shape, one side being 22 inches and the other 24 inches in width. It is erected upon trestlework and is of sufficient capacity to contain all the water of the stream at its ordinary stage. The defendants claim the right not only to divert the quantity of water mentioned in the Latourell deed, but also to appropriate 2½ second-feet by virtue of an application to the state board of control.

1. The plaintiff contends that in any event the right conferred by the Latourell deed is an easement appurtenant to the land described in that instrument, and is inseparable therefrom, so that it could not be transferred to Joseph except together with an estate in the land itself. The authorities cited by the plaintiff in support of his claim on this point relate to ways appurtenant to land access to which could not be enjoyed without the right of passage. A somewhat different rule applies to an easement for the diversion of water. By virtue of a classification too general in its terms and which unduly restricts the use of water as practiced in the western states, some authors make every easement necessarily dependent upon the ownership of

a dominant estate in lands. That a right to divert water upon the lands of another, although an easement in a certain sense, can be classed as a separate estate and is not unavoidably appurtenant to other lands is taught by *Goodrich* v. *Burbank,* 12 Allen (Mass.), 459 (90 Am. Dec. 161), *Poull* v. *Mockley,* 33 Wis. 482, *Columbia W. P. Co.* v. *Columbia Elec. etc. Co.,* 43 S. C. 154 (20 S. E. 1002), and *De Witt* v. *Harvey,* 4 Gray (Mass.), 486. Such a right may well enough be said to fall within that category within the meaning of *Jackson* v. *Trullinger,* 9 Or. 393, where Mr. Chief Justice Lord says that:

"An easement is defined to be the right which one man has to use the land of another for a specific purpose."

In *Ruhnke* v. *Aubert,* 58 Or. 6, 10 (113 Pac. 38, 40), Mr. Justice McBride explicitly states that:

"The right to take or divert water from the land of another constitutes an easement."

In that particular instance the water was to be used to irrigate a certain tract of land to which it was indeed appurtenant under the doctrine of that case, but it was not intended to say that in every instance water taken out upon the land of one person should necessarily become inseparably annexed to another parcel of realty. If it were the hard-and-fast rule that an easement for the diversion of water must indispensably be made appurtenant to same dominant estate, it would utterly defeat all projects for appropriation of water for sale and general distribution to the public, for often such appropriators do not own land themselves, but are only purveyors of water to those who do have real property. We hold, therefore, that the defendant Joseph is the owner of an undivided half of the water

right conferred upon Maffet by the Latourell deed, and cannot be prevented from the proper enjoyment thereof.

2. The plaintiff attacks the grant asserting that it is void for uncertainty. In construing the clause establishing the privilege we are entitled to take the whole instrument of which it is a part. The stream and the fall are natural objects upon the premises owned by the grantor at the time. The deed states that the lands are in Multnomah County, State of Oregon. The part indicated by metes and bounds is referable in its description to government surveys. It is said that the water is to be taken from the natural flow of the creek above the large fall. So far as location of the point of diversion is concerned and the water to be taken, there is enough in the deed for identification by the aid of parol testimony. For instance, in *Bogard* v. *Barhan,* 52 Or. 121 (96 Pac. 673, 132 Am. St. Rep. 676), it was held sufficient to allude to "the 15-acre farm located one mile north of Woodburn, Marion County, Oregon," and the "5-acre residence property lying west of the Catholic church," and that these designations might be aided by parol giving the correct metes and bounds. It is true that the case was reversed because the metes and bounds given in the amended complaint would not close, thus rendering the pleading amenable to demurrer. In *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027), we have approved the rule that:

"Any description by which the property might be identified by a competent surveyor, with reasonable certainty, either with or without extrinsic evidence, is sufficient."

There, the written agreement for the sale of lands referred to them as situated on "Sauvies Island," and known as the "Jackson Ranch," and more particularly

described in certain deeds from Meier & Frank and Richard Hall to W. R. Jackson, and recorded in the records of Multnomah and Columbia Counties, Oregon. The extrinsic evidence admissible was the certain record which cleared up the otherwise uncertain description in the contract. We conclude that the clause in question established an easement to divert water from the Latourell Falls Creek on the premises of the plaintiff.

3. It next becomes necessary to determine the extent of the right and its method of enjoyment. Easements are privileges to be exercised upon the land of another, and are therefore in derogation of his estate. It is a rule, therefore, that in construing them nothing is to be taken by intendment except what is reasonably necessary to the enjoyment of the right, all the while preserving the intent of the parties as manifested by the words of the grant: *Goodwillie Co.* v. *Elec. Co.,* 241 Ill. 42 (89 N. E. 272). Standing alone, the first sentence of the excerpt mentioned would be enough to convey the right to divert the water. It says:

"Also enough water from the natural flow of Latourell Falls Creek to be taken above the large falls, to fill and maintain a continual flow through a four-inch pipe at all seasons of the year."

By necessary implication enough would go with those words to enable the grantee to enjoy the privilege conferred, even if nothing else was said. But the language continues:

"Also ten feet square of ground above the Latourell Falls upon which to build a tank to feed said pipe and a strip of ground ten feet wide from which said creek is tapped to said tank and from said tank to where said pipe-line leaves the lands of J. C. Latourell, and the right to enter upon adjacent lands at all times to erect,

maintain, repair and operate said pipe, flume, or aqueduct and tank or reservoir.''

There is no designation of metes and bounds and no data or reference to any other source given by which such delimitations can be ascertained and applied to the ground thus mentioned. Considered as an executed contract for the sale of land to which the excerpt alludes, the description is so indefinite as to be void in the absence of any further agreement of the parties. Nothing is suggested and no reference is made to records as in *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027), whereby extrinsic evidence to explain this description could be supplied. The only use for the dimensions given is to restrict the size of the structures used in transporting the water. It follows that as a conveyance of the land itself above the falls the instrument is void, and does not pass title as it did to the premises described by metes and bounds with reference to government surveys.

4. Bearing in mind that only that is to be taken by intendment which is reasonably necessary to enjoy the right conferred, it is plain that the owners of the easement are entitled to go only so far above the fall as is reasonably necessary to divert the water. The language does not confer upon them the privilege of going at will and pleasure clear across the plaintiff's lands, unless it is necessary for fair enjoyment of the right. The instrument speaks of the ''natural flow'' of Latourell Falls Creek. This means the water as it runs in the stream in the original state of nature, unaffected by dams or other artificial contrivances. Reference is made to maintaining a continual flow through a four-inch pipe; also to a tank to feed ''said pipe''; also to ''where said pipe-line leaves the lands of J. C. Latourell''; and the right to ''repair and operate said

pipe." These terms plainly indicate that the parties contemplated and intended that the water should be diverted through a pipe and not through an open-box flume such as the pleadings describe and admit has been used in this instance. True enough, it is said that the grantee may "operate said pipe, flume or aqueduct." Unless there should be a pipe to fill with a continual flow, how could there be enough water taken to serve that purpose, and unless there was a pipe to feed, how could there be a tank built to feed it? Then, too, unless there was a pipe-line to leave the lands of Latourell, how would we satisfy that language in the excerpt? Moreover, it would be difficult for the grantee to repair and operate "said pipe" unless there was one there to operate and repair. The primary definition of flume, according to the Century Dictionary, is "a stream, a river." In that sense it is synonymous with the Latin word "flumen," from which it is derived. It is also applied to a narrow defile in the hills having perpendicular walls and through which a torrent flows. The same author describes it thus:

"An artificial channel for a stream of water to be applied to some industrial use."

Flumes for conducting water to mill-wheels are open or covered passages formed of boards, planks or stone from which the water falls upon the wheel. Other lexicographers give substantially the same definition of the term. In *Joseph Milling Co.* v. *City of Joseph,* 74 Or. 296 (144 Pac. 465), we are told of what is termed a "barrel flume." The structure, therefore, is not necessarily of wood or an open box and, as applied to the instant case and the clause under consideration, it would not be doing violence to the vernacular to say that the designation of "flume" might be applied to a pipe conveying water upon or above the surface of

the ground.    Taking the language by its four corners, we cannot fairly say that the single word "flume" ought to overcome all the other allusions to a pipe as a conduit for the water.    As used in the deed, "flume," is not inconsistent with "pipe-line," and, construing the words all together, we think the parties contemplated a pipe-line, and not such a structure as the pleadings here describe.    They had a right to contract in the manner indicated, and their stipulations should be observed.

5.  The Latourell deed was duly recorded in the deed records of Multnomah County before the plaintiff bought his land.    He was not entitled to rely upon the abstract as a muniment of title nor as a control of the rights of others previously granted.    The record is the standard which the law has erected to decide such questions, and he is bound by the terms of the conveyance as recorded, but no further.

6.  It is argued that because the flume is constructed over waste and rocky ground, no damage results to the plaintiff; but every invasion of one's domain beyond what is authorized imputes some damage; and, as taught in *Chapman* v. *Dean,* 58 Or. 475 (115 Pac. 154); *Stotts* v. *Dichdel,* 70 Or. 86 (139 Pac. 932) and *Postal T. Co.* v. *Forster,* 73 Or. 122 (144 Pac. 491), it is against such incessant trespasses, the uninterrupted continuance of which is threatened, that equity will lend its aid without driving a plaintiff to an action at law for every separate and minute invasion of his domain.    It is no argument to say that because a man's rights may be small they may be disregarded. In giving to every man a remedy by due course of law for injuries done him in his person, property or reputation, Article I, Section 10, of the state Constitution does not distinguish between different rights whether

they be great or small. It protects the poor and the rich, the weak and the powerful, alike; and, if one is wronged in any degree, the law will protect him.

7. Neither have the defendants the authority, under the terms of the Latourell deed, to go upon the lands of the plaintiff to take out any more water than that mentioned in the conveyance under which they claim. It is said in Section 6594, L. O. L.:

"Subject to existing rights all waters within the state may be appropriated for beneficial use, as herein provided, and not otherwise; but nothing herein contained shall be so construed as to take away or impair the vested right of any person, firm, corporation, * * to any water."

The section was amended as shown by the Laws of 1913 at page 273 in a manner not affecting the language quoted. This section does not give the right to private individuals to invade the premises of any other person for the purpose of diverting water from a stream. It is only by the power of eminent domain, which has never yet been granted to any individual for private purposes, that such a prerogative can be exercised, and then only for public use. To allow the defendants to do so in this instance in excess of the terms of their grant would be to take the property of one man and give it to another. Their rights on the premises of the plaintiff are measured by the terms of the Latourell deed, and, having been given this inch, they cannot take the ell they desire.

The conclusion is that the defendants must be restricted in their enjoyment of the water right to the use of a four-inch pipe introduced into the stream at a point above the falls no farther than is reasonably necessary to give access thereto for the purpose so as to take of the natural flow, without the aid of dams or

other artificial appliances, enough water to fill the pipe by which it shall be conducted from the land of the plaintiff.

The decree of the Circuit Court will be modified accordingly.                                    MODIFIED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE McBRIDE concur.

MR. JUSTICE BEAN concurs in the result.