Argued March 22; reversed April 11, 1944

DILL et al. *v.* KILLIP et al.

(147 P. (2d) 896)

Before Bailey, Chief Justice, and Kelly, Lusk, Brand and Hay, Associate Justices.

*Ralph E. Moody,* of Salem (L. G. English, of Toledo, on the brief), for appellants.

*Louis E. Schmitt,* of Portland (G. B. McCluskey, of Toledo, on the brief), for respondents.

KELLY, J.

Plaintiffs' premises consist of one acre and lie along and westerly of the Oregon Coast Highway in Lincoln County, Oregon. Prior to May 19, 1938, these premises comprised a part of a larger tract belonging to defendants. The cause of the controversy is the divergence of opinion between the parties plaintiffs and defendants as to their respective rights in and to appropriated water from a reservoir formed to impound the water from springs which are approximately 500 feet northeasterly from the nearest boundary line of defendants' premises.

Defendants' rights thereto were derived from a grant thereof on or about November 21, 1931, by F. W. Gertulla who had secured a permit from the state engineer to appropriate one second foot of the water in said reservoir with a priority of July 15, 1925. The

water from said reservoir was conveyed to defendants' property in a pipe and was variously used by defendants for domestic purposes, for cleaning fish, for stock and for irrigation.

On the 19th day of May, 1938, by a warranty deed the defendants conveyed to the plaintiffs said premises, consisting of one acre, which were also being served by said water system.

The operative words of grant of said deed are as follows:

"Know all men by these presents, That J. J. Killip and Ann Louise Killip, his wife in consideration of Ten & no/100 dollars and other good and valuable considerations to them paid by Colman O. Dill and Clara O. Dill, his wife do hereby grant, bargain, sell and convey unto said Colman O. Dill and Clara O. Dill, his wife their heirs and assigns, all the following real property, with the tenements, hereditaments and appurtenances, situated in the County of Lincoln and State of Oregon, bounded and described as follows, to-wit:

Begin at a point that is 153 feet East and 53.6 feet North of the fractional corner between Sections 2 and 11, Township 8, South Range 11, West of the Willamette Meridian on the right bank of Siletz River, running thence South 50°08′ West 59.4 feet; thence South 84°48′ West 46.4 feet; thence North 16°15′ West 127.4 feet; thence North 27°52′ West 197 feet; thence North 25°08′ East 100 feet to the West Boundary of the Oregon Coast Highway; thence Southeasterly along the West Boundary of Highway to the place of beginning containing 1 acre more or less."

The consideration for said transfer from defendants to plaintiffs was the payment by plaintiffs of $4,000.00 and the transfer by plaintiffs to defendants of some encumbered real property in the city of Portland.

Subsequent to the execution of said warranty deed by defendants, namely, on June 24, 1938, a letter signed by defendant J. J. Killip was given to plaintiffs containing the following statement:

"As to water used and to be used upon the property recently purchased and leased from us, you may be assured that so long as water is available from the present source, the property you have purchased and leased, will be served as it now is."

The reference to property "leased from us" in the above quoted excerpt from defendant's letter of June 24, 1938, refers to property designated as being on the lower level, which was leased by defendants to plaintiffs for a term of one year beginning in May, 1938, and ending May, 1939.

The testimony is conflicting with reference to what was said about the water-rights in controversy by the parties before the execution of the deed above mentioned. Plaintiffs testify that defendants assured them that the same service would continue as that which plaintiffs found in operation when they first visited the premises. Defendants and their attorney testify that plaintiffs were informed that no water-right could be transferred to them by defendants because litigation was imminent concerning the right to the water from the reservoir above mentioned.

We think the preponderance of the evidence supports plaintiffs' claim.

During the examination of defendant J. J. Killip, the learned trial judge remarked:

"Of course what I want to find out is what agreement you made if any to furnish water. Apparently you made one from the tone of your letter,

while the letter isn't very definite. The letter of June 24th, I believe it is 1938, and it is apparent from that that there was some promise made about water, and it is also apparent these people wouldn't have bought a place of that kind unless they had some water. Now, what I want to know is what the agreement was. That's the ultimate question as I understand it."

Moreover, the record discloses that defendants were successful in the litigation to which they referred in their testimony as deterring them from granting the water-right to plaintiffs.

■ Defendants' attorney, in his oral argument, called attention to the following statement found in Wiel's Water Rights in the Western States:

"It is well settled that a water-right *may* pass with land as an appurtenance thereto, or as a parcel thereof, but not *necessarily* so; and whether a water-right passes as an appurtenance involves two questions, viz: (a) Whether the water-right is an appurtenance, and (b) whether, being such, it was intended to pass. Both of these are questions of fact in each case." Final paragraph of Sec. 550, p. 587, Vol. 1, Wiel on Water Rights in the Western States, 3rd Ed.

■ Reading further from that authority, we find the following statement:

"The first question, whether the water-right is an appurtenance, depends on whether it is an incident, necessary to the enjoyment of the land. The water-right is not necessarily appurtenant to or parcel of any land; and whether it is an appurtenance or parcel is a question of fact resting chiefly upon whether it was used specially for the benefit of the land in question. * * * A water-right is incidental or appurtenant to land when by right used with the land for its benefit." Sec. 551, pp. 587, 588, ibid.

■ With other authorities in support of the principle last above quoted the author cites *Bank of British North America v. Miller,* 7 Sawyer 163, 6 Fed. 545. In that case the opinion was written by the late Judge Deady and the property involved consisted of lots 5 and 6 and a portion of lots 7 and 8 in block 2 in Oregon City, Oregon. The question decided was whether a lien upon the water-right was created by a mortgage of the real property.

We quote from the opinion:

"It is also clear that a sale of any real property carries with it any easement or privilege which is necessary to its enjoyment, and at the time is in use thereon and therewith, as an appurtenance in fact, although not technically so at law, and this upon the presumption, more or less cogent according to the circumstances, that it was the intention of the parties to the agreement of sale that it should pass with the property to which it was then apparently subservient." Citing authorities.

"In such a case the question is simply as to the intention of the parties to be gathered from the terms of the conveyance, the subject-matter, and its use and situation at the time of the sale, or as was said by Mr. Justice Story in U. S. v. Appleton, supra: 'In the construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. In truth, every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for.' In this case it was held that the vendees of the wings of a building were entitled, as against a prior vendee of the central part thereof, to the use of the windows and doors opening on to the front porch of the

latter, not because such right was technically appurtenant thereto, but because such porch was so used at the time of the sale of the wings." *Bank of British North America v. Miller,* supra, at pp. 550 and 551.

We quote from the case of *Coolidge v. Hager,* 43 Vt. 9, 5 Am. Rep. 256.

"Whoever grants a thing is supposed also, tacitly, to grant that without which the grant itself would be of no effect. 2 Wash. Real Prop., 622. Broom's Max., 362. Branch's Max., 32. Upon the principle of this maxim the grant to Mrs. Johnson of the house and land, and that part of the aqueduct in the land, carried with them the running water and the right to have it continue to run as it was then running, because the defendant could grant all these and without them the rest of the grant could not have been enjoyed in all its material parts. Since Nicholas v. Chamberlain, Cro. Jac., 121 [Vol. 3 Croke's Reports 121] this maxim has in almost all cases that have arisen been applied to grants of land, with water running to buildings upon it, wherever the grantor had a permanent estate that he could convey in the water and the aqueduct in which it was running, such as the defendant had in this aqueduct and this water. New Ipswich Factory v. Batchelder, 3 N. H., 190; Dunklee v. Wilton Railroad Co., 24 N. H., 489; Vermont Central Railroad Co. v. Hills, 23 Vt. 681."

This court has followed that rule in the following cases: *McCoy v. Huntley,* 60 Or. 372, 375, 119 P. 481, Ann. Cas. 1914 A, 320; *Morse v. Whitcomb,* 54 Or. 412, 421, 102 P. 788, 103 P. 775, 135 Am. St. Rep. 832; *Turner v. Cole,* 31 Or. 154, 49 P. 971; *Mattis v. Hosmer,* 37 Or. 523, 531, 62 P. 17.

In 1881, the late Mr. Chief Justice Lord used the following expression:

"The maxim of the law is that whoever grants a thing, is supposed, also, tacitly, to grant that, without which, the grant would be of no avail. Where the principal thing is granted, the incident shall pass. (Co. Litt., 152.)

"By the grant of a mill, or the grant of land with the mill thereon, the waters, flood-gates, and the like, which are of necessary use to the mill, pass as incident to the principal subjects of the grant. (Shepherd's Touchstone, 989; 4 Kent's Com.)" *Jackson v. Trullinger,* 9 Or. 393, 398.

The same principle has been announced in the following cases: *Paine v. Chandler,* 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99, affirming 23 N. Y. S. R. 357, 5 N. Y. Supp. 739; *Larsen v. Peterson,* 53 N. J. Eq. 88, 30 A. 1094; *Schwann v. Cotton,* 1916, L. R. Ch. Div. Vol. 2, p. 120; *Wardle v Brocklehurst,* Vol. 1 E & E's Reps., 1058; *Heffley v. Lohr,* 149 Pa. Super. 586, 27 A. (2d) 275.

Defendants argue that, because it was not stated in the statutes of Oregon, prior to 1927, that water-rights obtained by appropriation are appurtenant to the land served thereby, the water-rights in controversy in this suit could not be deemed to be appurtenant to the real property conveyed by defendants to plaintiffs for the reason that such water-right had a priority of 1925.

Whether, in the absence of a statute, a water-right may be deemed to be a legal appurtenant or merely a right which by use becomes an appurtenant in fact as an incident to the enjoyment of the premises it serves, a question upon which our conclusion herein is not based, we think that under the authorities above

cited and quoted, the water-right in suit passed by grant from defendants to plaintiffs.

As a light upon whether in the absence of a statute the term appurtenance is within the approved nomenclature of water service when applied to a water-right secured by appropriation, we have recourse to an opinion rendered in 1897 by the late Mr. Justice WOL-VERTON wherein he says:

"The water has also been put to other uses upon this land by means of said ditches. It has been used for irrigating gardens, for producing small quantities of grain, and for stock and domestic purposes; and we think there has been an appropriation of water through and by means of these ditches for a beneficial use that is appurtenant to the lands settled by Price, and afterwards patented to Imbler, * * *." [31 Or. 154]

The foregoing quotation is preceded by the following statement:

"As between Price and Imbler, it is very satisfactorily shown that Imbler purchased the former settler's rights, and acquired from him a transfer of possession, which would carry with it whatever water appropriation was appurtenant thereto. Hindman v. Rizor, 21 Or. 112, (27 Pac. 13). The several deeds through which the plaintiff connects his title with that of Imbler makes no specific mention of the appropriation of any water right acquired through these ditches; but, if appurtenant to the land, it would pass with the grant in general terms: Simmons v. Winters, 21 Or. 35 (28 Am. St. Rep. 727, 27 Pac. 7)." *Turner v. Cole,* 31 Or. 154, 157, 159, 49 P. 971.

Defendants also argue that the provision of the 1927 enactment (Chapter 219, General Laws of Oregon, 1927, p. 276) to the effect that "All water used in this

state for any purpose shall remain appurtenant to the premises upon which it is used" etc., has no application to the water-right in suit because such water-right has a priority of 1925 or two years before the date of such enactment.

Since Mr. Gertulla secured the water-right in suit, no vested right has accrued therein or thereto inconsistent with the use to which defendants were applying it when they conveyed the real property in suit to plaintiffs.

■ The control by the legislative assembly of all the waters of the state is plenary except that vested rights therein and thereto may not be affected. *In re Water Rights of Hood River*, 114 Or. 112, 227 P. 1065.

■ The pleadings disclose that at the time of the purchase by plaintiffs of the real estate hereinabove described, there was situated thereon a gas filling station and three modern tourist cottages; that since said time the plaintiffs have erected additional buildings and improvements and have operated a business including a restaurant thereon.

It is also disclosed by the pleadings and the proof that at the time of the purchase of said premises they were connected with a water supply pipe leading from the reservoir first hereinabove mentioned as being northeasterly from defendants' premises a distance of approximately 500 feet, said reservoir being about 1000 feet northerly from the premises consisting of one acre which defendants conveyed to plaintiffs, and part of said pipe-line last mentioned ran through premises owned by defendants before reaching the premises now owned by plaintiffs. It also appears from the pleadings and proof that at the time of said transfer by defendants to plaintiffs of said one acre, the water

passing through said last mentioned pipe-line was in use in and about the buildings thereon to supply water for domestic and other uses on said premises.

Involved in this case are other and different springs from the springs supplying water for the reservoir first herein mentioned. These other springs are known to this record as the lower springs, and are referred to as being situate in a canyon southerly from the canyon in which said first mentioned reservoir is situate, and are termed the lower springs.

Mrs. Killip, one of the defendants herein, was asked the following question and gave the following answer:

"Q. Is there any connection from the upper springs to the lower springs by means of a pipe which would empty it into the lower spring?

A. Yes, there is a valve that can put the upper springs into the lower springs, and it has been closed. Is that what you mean?"

Plaintiffs contend that defendants assured them that in the event the water from the upper springs became unfit or unavailable, the water from the lower springs would be substituted therefor. This is denied by defendants.

The record does not require a special consideration of this issue for the reason that it is conceded that a sufficient supply of water may be had from the upper springs, if proper attention be given to the use of such springs and the maintenance of the reservoir they serve.

Despite the fact that we think plaintiffs have proved that they were granted a water-right by defendants as an incident necessary to the use and occupancy of the premises conveyed, the extent of

which should correspond with the amount which served the needs and purposes of the demised premises when the conveyance to plaintiffs was made, and that defendants have interfered with, and deprived plaintiffs of that water-right, we are wholly at a loss to define or describe in intelligible terms the extent thereof.

It is obvious that a right cannot be adequately protected by injunction unless such order defines or describes the nature and extent thereof. The water-right in suit now vested in plaintiffs consists of an easement over the property wherein are situate the springs and reservoir and pipes therefrom to plaintiffs' property enabling plaintiffs to enter upon such property to care for, clean and keep in repair such springs, reservoir and pipes and such water-right also of necessity consists of the right to a certain quantity of water from said sources, but that quantity is not made definite enough to describe it either in miner's inches or otherwise.

For that reason, it becomes necessary to reverse the decree of the trial court and remand this cause in order to enable the trial court to ascertain the extent of plaintiff's water-right and make an injunctive order thereupon.

■ Whether for the purpose of determining the extent of plaintiffs' water-right, this case should be transferred to the State Engineer is a matter within the discretion of the learned judge of the trial court. Section 116-801, Vol. 8, O. C. L. A. p. 934.

The decree of the circuit court is therefore reversed and this cause is remanded for further proceedings not inconsistent herewith. It is further ordered that neither party recover costs or disbursements on this appeal.