Argued September 18; reversed October 24, 1947

BEISELL ET UX. *v.* WOOD ET UX.

185 P. (2d) 570

*Ralph M. Holman,* of Oregon City (with Butler & Jack, of Oregon City, on brief), for appellants.

*John H. Carson,* of Salem, for respondents.

Before Lusk, Acting Chief Justice, and Kelly, Bailey, Hay and Winslow, Justices.

HAY, J.

This is a suit in equity for an injunction against interference with water rights. Plaintiffs are the owners and in possession of a tract of about one acre of land near the town of Detroit, in Marion county. Defendants own and are in possession of a tract of about 8.38 acres adjoining plaintiff's tract. The parties derived title to their respective tracts through mesne conveyances from a common grantor, one F. W. Stahlman. A spring of water arises on the tract owned by defendants. On August 27, 1929, Stahlman, who at that time owned the land comprising both tracts, conveyed the tract now owned by plaintiffs to J. F. and

Ethel A. Bewley. The instrument of conveyance included a grant of the use of water from said spring, in the following language:

> "Together with all water rights and free use of water from the springs for domestic and irrigation use from the springs on the adjoining property of Fred Stahlman, from which water is now piped to the property described above now being conveyed to and sold to Ethel A. Bewley and J. F. Bewley."

On April 21, 1931, Stahlman conveyed to Roy Robnett the tract now owned by defendants, subject to the following specific exception:

> "In a deed granting and selling real property the said Fred Stahlman did sell and convey to Ethel A. Bewley and Frank Bewley free use of water for domestic and irrigation use from the springs on the land now being sold and conveyed to Roy Robnett and from said springs the water was then and is now piped to the property deeded to Ethel A. Bewley and Frank Bewley."

The complaint, after setting forth the ownership of the respective tracts, alleges that, from the date of the conveyance by Stahlman to the Bewleys and until on or about July 27, 1946, water from the spring on defendants' tract was piped to the tract owned by plaintiffs and was used by the owners thereof; that, on or about July 27, 1946, the defendants destroyed the pipe-line and cut off the flow of water; that, thereafter, plaintiffs entered upon defendants' land and repaired the pipe-line, but that defendants again destroyed it, and forbade plaintiffs from entering their premises to make further repairs; and that, by such actions of defendants, plaintiffs have been deprived of the use of the water for domestic and irrigation purposes. The prayer is for an injunction restraining

defendants from interfering with the flow of water from the spring to plaintiffs' land, and requiring defendants to permit plaintiffs to enter upon defendants' land for the purpose of repairing the pipe-line. General damages in the sum of $2,500 and special damages in the sum of $250 are demanded.

The defendants' amended answer admits ownership of the respective tracts as alleged, but denies all other allegations of the complaint. As an affirmative defense, it alleges that, on February 1, 1945, in a proceeding in the Circuit Court of the State of Oregon for the County of Marion, entitled: "In the Matter of the Determination of the Relative Rights to the use of the Water of North Santiam River and its Tributaries, a tributary of Santiam River", initiated under the provisions of chapter 8, title 116, O. C. L. A., to which proceeding plaintiffs' predecessor was a party, a decree was duly entered by which there was awarded and confirmed unto one Lulu White, at that time the owner of the tract now owned by defendants, the right to the use of the waters of the spring involved herein, with priority as of the year 1908, for the irrigation of three acres of land and for domestic and stock purposes, and that the entire flow of the spring is required to satisfy the water right so awarded. These allegations are denied by the reply.

A hearing was held, and thereafter the trial court found that the plaintiffs were not entitled to the relief prayed for and entered a decree dismissing the suit. Plaintiffs appeal.

The Stahlman conveyance, which is in evidence, shows that, at the time when it was executed, the pipe-line had been installed and water was being piped from the spring to the tract now owned by plaintiffs.

A spring, for the purposes of this discussion, may be defined as a place where water issues naturally from the surface of the earth. 1 Kinney, Irrigation and Water Rights, 2 ed., section 313; 58 C. J., Spring, section 1. The water of the spring involved in the present case does not pass from the tract of land upon which it arises, or becomes the source of any watercourse. It merely seeps or flows directly into a small marsh upon the same tract, having no perceptible outlet. Such a spring is not subject to appropriation by any person other than the owner of such land. It is private water, a part of the land upon which it arises, and belongs to the owner of that land. 2 Kinney, Irrigation and Water Rights, 2 ed., section 648; *Morrison v. Officer,* 48 Or. 569, 570, 87 P. 896; *Henrici v. Paulson,* 134 Or. 222, 224, 293 P. 424; *Klamath Development Co. v. Lewis,* 136 Or. 445, 450, 299 P. 705; *Skinner v. Silver,* 158 Or. 81, 98, 75 P. (2d) 21.

Defendants' plea of estoppel by prior adjudication cannot be sustained. Their affirmative answer alleged, as stated above, that plaintiffs' predecessor in interest was a party to the North Santiam River adjudication. This allegation was denied, and the defendants had the burden of establishing it by proof. 30 Am. Jur., Judgments, section 278; *Hawkeye L. Ins. Co. v. Valley-Des Moines Co.,* 220 Iowa 556, 260 N. W. 669, 105 A. L. R. 1018. They failed to do so. So far as the evidence in this case is concerned, the plaintiffs are not bound by that adjudication. 30 Am. Jur., Judgments, section 220; *Staub v. Jensen,* 180 Or. 682, 178 P. (2d) 931.

The water of the spring, being a part of the land upon which it arises, may be severed therefrom and the right to use the same conveyed away by deed. *Mes-*

*singer v. Woodcock,* 159 Or. 435, 444, 80 P. (2d) 895;
*Talbot v. Joseph,* 79 Or. 308, 311, 155 P. 184. The right
granted by Stahlman to the Bewleys included the use,
upon the property conveyed, of water from Stahlman's
spring for domestic and irrigation purposes. The
conveyances recited that the water of the spring had
been piped to the land conveyed. Its use was an
incident necessary to the enjoyment of such land, and
it was intended to be used and was actually used for
the benefit thereof, and hence became appurtenant
thereto. *Dill v. Killip,* 174 Or. 94, 98, 147 P. (2d) 896.

The defendants seek to take advantage of a mis-
description of the water right, as contained in the con-
veyances in plaintiffs' chain of title subsequent to the
conveyance by Stahlman to the Bewleys. Such mis-
description, employing the exact language of the grant
of water from the spring as contained in the Stahlman
conveyance, referred to the spring as being "on the
adjoining property of Fred Stahlman", whereas Stahl-
man no longer owned that property. Defendants assert
that the description was insufficient to pass the water
right.

■ The right to take or divert water from the land of
another for the benefit of the land of the grantee is an
easement appurtenant to the grantee's land. *Ruhnke
v. Aubert,* 58 Or. 6, 10, 113 P. 38.

"A grant of an easement must contain all the
formal requisites of a grant of land, and should be
certain and definite in its terms."

19 C. J., Easements, section 91.

See also 28 C. J. S., Easements, section 24.

■ While it is obvious that the description of the
water right in the later conveyances was erroneous, we
think that the error was not fatal. The easement was

appurtenant to the land conveyed. Each conveyance included an express grant of the appurtenances, and the authorities hold that a grant of land with its appurtenances is sufficient to pass a water right which is actually appurtenant to and necessary or convenient to the beneficial use of the land conveyed. 67 C. J., Waters, sections 553, 579, 582; *Skinner v. Silver,* supra (158 Or. 81, 96, 99, 75 P. (2d) 21); *Dill v. Killip,* supra (174 Or. 94, 98, 147 P. (2d) 896).

The defendants say that, even assuming that the plaintiffs do have a right to the water of the spring, they have not shown that defendants have infringed upon such right sufficiently to warrant the issuance of an injunction.

■ In order to invoke equitable protection by way of injunctive relief, a plaintiff must establish that the rights in respect of which such relief is sought are of the character which equity will protect, and that the threatened or actual invasion thereof of which he complains is or will be an injurious invasion of such rights which will result in actual and substantial damage. 28 Am. Jur., Injunctions, section 28.

The evidence shows that the pipe-line upon defendants' premises was twice broken. A caterpillar tractor was being operated by one William Dodd, who was buying land from defendants. It appears that Dodd may have been responsible for the first break. Immediately thereafter, George Beisell, one of the plaintiffs, went upon defendants' land and made temporary repairs upon the line, whereupon water flowed through the pipe for a brief period, but defendants then turned it off. Upon Beisell's protesting such action, defendants informed him that they were going to erect cabins

upon their property, and that thereafter there would be no surplus water available for plaintiffs.

"They said that they was going to put the cabins in and there would not be sufficient water for the cabins and the people on the line and they had the right to the springs and that if we should be cut off—that if we had the water it was just temporary and if they didn't take it to supply the cabins it would be for the use of irrigation and to irrigate their orchard."

Mrs. Wood, one of the defendants, told plaintiffs, moreover, that they had no right to the water, as the spring was on defendants' property, and that whoever deeded it to plaintiffs had no right to do so. Mr. Delmar Wood, the other defendant, used the caterpillar tractor to level some ground on defendants' premises, including ground beneath which plaintiffs' pipe-line runs, and he conceded that his use of the tractor could have caused the second break in the line. We think that the evidence indicates that it did so. William Dodd, who operated the tractor at about the time of the first break, afterwards moved on to plaintiffs' property with a trailer-house, in which he lived there for a time. Defendants told plaintiffs that, as long as Dodd was on the latter's property, they would receive no water through the pipe-line. Moreover, it appears clearly that defendants insisted to plaintiffs that the latter had no right to any of the water, and at least implied that such use thereof as plaintiffs had made was by mere license or sufferance of defendants and their predecessors. They emphasized these contentions, shortly after plaintiffs' temporary repair of the first break in the line, by erecting "no trespassing" signs upon their property. While they denied that such signs were directed against plaintiffs, the facts that

they were and still are asserting the exclusive right as against plaintiffs to the use of all the water of the spring, and that some of the signs were erected facing plaintiffs' property, would seem to indicate otherwise.

■ We are of the opinion that the acts of the defendants will, unless enjoined, constitute an irreparable injury to plaintiffs' estate, and that, in refusing an injunction in the premises, the trial court erred. *Oldenburg v. Claggett,* 142 Or. 238, 241, 20 P. (2d) 234.

■ Defendants' actions in the premises caused plaintiffs to be deprived of the use of the water of the spring, for a period of about five months immediately preceding the hearing, and they were obliged to procure water for domestic purposes from a neighbor, which involved hauling such water a distance of about a quarter of a mile. Such lack of water, moreover, made it necessary for them and their children to travel to such neighbor's place in order to avail themselves of facilities for bathing and for washing their linen. Assuming, without deciding, that evidence of loss of time and of expense involved in this connection was admissible under the allegations of general damages, we are of the opinion that the evidence offered will not support an award of damages. While the inconvenience was no doubt considerable, there was no proof whatever of the time consumed or expense involved, or of the value thereof in terms of money, factors which were essential to enable the court to make an award of monetary compensation therefor. As a general rule, compensation in money must be fixed according to some standard which will admeasure the loss in terms of pecuniary value, if this can be done, and the measure applied must be a real and tangible one. 17 C. J., Damages, section 166 C; 25 C. J. S., Damages, section

71. We think that the value of the time consumed and expenses involved herein were matters that were susceptible of proof within a reasonable degree of certainty. The court cannot base an award of damages upon mere speculation, conjecture, or surmise. *Porter Const. Co. v. Berry*, 136 Or. 80, 93, 298 P. 179; 15 Am. Jur., Damages, section 23. Under the circumstances, nominal damages only may be awarded. *Austin v. Bloch*, 165 Or. 116, 119, 105 P. (2d) 868.

■ There was evidence that, in making the necessary repairs to the broken pipe-line, plaintiffs will incur, expenses amounting to about $25 for labor and material. These are within the allegation of special damages, and are recoverable under that head.

■ The spring rises into a small basin or reservoir, from which the water discharges through the pipe which runs to plaintiffs' land. Where it leaves the reservoir, the pipe is of four-inch diameter, which is reduced, as the line proceeds, first to two inches and finally, where it enters plaintiffs' tract, to one and one-quarter inches. At some point in the line, the evidence indicates that a line branches off to serve another user. The record is bare of evidence as to the amount of spring water which has been used by plaintiffs and their predecessors, but we may assume that they have used whatever amount was necessary for domestic and irrigation purposes upon the tract to which the right is appurtenant, limited by the capacity of the pipe-line. *Talbot v. Joseph,* supra, (79 Or. 308, 318, 155 P. 184). It is not apparent from the terms of the original Stahlman grant that the whole flow of the spring was intended to pass thereby. There was no evidence of the volume of flow. It is probable that other persons (perhaps even the defendants) may

have rights in the waters. For these reasons, it is neither possible nor desirable to attempt to determine relative rights herein any further than to the extent of finding that plaintiffs' rights are superior to those of defendants. *David v. Brokaw,* 121 Or. 591, 602, 256 P. 186. We do so find.

The decree appealed from is reversed, and one will be entered restraining and enjoining defendants, and each of them, from interfering with the flow of water from the spring which arises upon defendants' land to and upon plaintiffs' land for domestic and irrigation use thereon, through a pipe-line of the dimensions hereinabove set forth, running from said spring to and upon plaintiffs' land, as heretofore used by plaintiffs and their predecessors in interest, further restraining and enjoining defendants, and each of them, from preventing or obstructing plaintiffs from entering upon defendants' land along such pipe-line for the purpose of repairing and maintaining the same, and awarding plaintiffs judgment against defendants, and each of them, in the sum of $26, besides costs in this and in the lower court.